### DENNIS et al. v. SLYFIELD et al.

(Circuit Court of Appeals, Sixth Circuit. August 15, 1902.)

### No. 1,047.

1. ADMIRALTY—APPEAL—REVIEW OF INTERLOCUTORY DECREE.

A decree sustaining a demurrer to a libel, but giving the libelant leave to file an amended libel, of which he avails himself, is interlocutory only, and is brought up for review by an appeal from the final decree subsequently entered on the amended libel.

2. CONTRACT—VALIDITY—LACK OF MUTUALITY.

A contract which recited that the second parties were "desirous to ship by vessel certain lots of hardwood lumber," and by which the first party agreed to carry on his vessels "any and all of this lumber as may be desired by the parties of the second part," is void for want of mutuality.

3. EVIDENCE—VARYING TERMS OF WRITTEN CONTRACT BY PAROL.

Evidence that at the time such contract was executed it was understood that the second parties had about a certain quantity of lumber, which it was expected by both parties would be shipped under the contract, or that they orally promised to ship the same on the vessels of the first party, is inadmissible to show that they were bound by the contract, since by its express terms they were given the option to ship "any or all" of it thereunder.

4. CONTRACTS—CONSTRUCTION OF WRITING.

Such writing cannot be construed as a proposition by the first party which might become a binding contract on its subsequent acceptance by the second parties, since it was executed by both parties, and purported to be a completed agreement, the terms of which would be varied by a subsequent agreement by the second parties to ship all their lumber by the vessels of the first party.

5. ADMIRALTY—PLEADING—EXCEPTION TO LIBEL.

A so-called exception to a libel to recover damages for breach of a maritime contract on the ground that it does not "set forth any facts showing wherein this exceptor failed, neglected, or refused to carry out and perform the terms of said alleged contract," is in fact a demurrer, which goes to the whole libel, and which is therefore bad if any breach is well pleaded.

---

¶ 2. Mutuality in contracts, see note to Cotton Oil Co. v. Kirk, 15 C. C. A. 543.

**6. SAME—SUFFICIENCY OF LIBEL.**

In a libel to recover for breach of a contract, a general allegation that libelants had at all times performed all that was required of them under such contract is sufficiently specific, without enumerating the several acts required to be done by them, and alleging their performance.

Appeal from the District Court of the United States for the Eastern District of Michigan.

This is a libel against the propeller White Star, the barge Eva S. Robinson, and also against Luther L. Slyfield, as owner of said vessels, for a breach of a contract civil and maritime. The libelants, being large dealers in lumber, and anticipating that they would have for shipment during the season of 1899 about 15,000,000 feet of lumber, aver that they entered into an agreement with the respondent Slyfield, as owner of the propeller White Star and the barge Eva S. Robinson, by which Slyfield agreed that, for a consideration named, his said vessels should carry all of the said lumber, and that they should diligently and exclusively engage in the carriage of said lumber, and that libelants agreed to ship said lumber by said vessels and pay the rate agreed upon. The libel set out in hæc verba so much of said agreement as was reduced to writing, and averred, that upon considerations named in the writing, libelants had orally agreed to ship between twelve and fifteen million feet of lumber by respondent's vessels. The writing was in these words:

"Memorandum of agreement made this 10th day of March, 1899, by and between Arthur B. Slyfield, of Port Huron, Michigan, manager, representing L. L. Slyfield, who is the owner of the boats known as the steamer White Star and the barge Eva S. Robinson, party of the first part, and Dennis Bros., of Grand Rapids, Michigan, parties of the second part, as follows: Whereas, said parties of the second part are desirous to ship by vessel certain lots of hardwood lumber, party of the first part agrees to carry on the above-named boats any and all of this lumber as may be desired by the parties of the second part from time to time during the season of navigation of 1899, at the following prices: From all Lake Michigan ports to Detroit, $1.75 per M ft.; to Ohio ports, Buffalo and Tonawanda ports, $2.00 per M ft. There will also be some lumber to be shipped from Alpena and other Lake Huron ports, which is to be one shilling per M ft. less than the above prices. From all Lake Michigan ports to Michigan City or Chicago, $1.75 per M ft. The above prices are to be for all kinds of hardwood lumber except basswood, which is to be 25c. per M ft. less than the above-named prices, and elm one shilling less. The above lumber is to be taken over the rail or from dock according to the usages of the ports where the lumber is loaded, and to be delivered on docks at destination. It is also agreed and understood that excess of insurance which parties of the second part have to pay because of any boat not being classed up to A2 shall be deducted from the freight. Also it is understood that parties of the second part are not obliged to accept any boats classed lower than A2½. This contract is made with the understanding and agreement that Arthur B. Slyfield is to manage the above-named boats the season.

"[Signed]
Arthur B. Slyfield.
"L. L. Slyfield.
"Dennis Bros."

The libel then avers the breach of this agreement after its partial execution, and alleges that on September 23, 1899, the respondent gave notice that he would not further perform. It is then averred that libelants instituted suit at once for the breach, and that on September 26, 1899, respondent retracted his refusal to perform on condition that the contract should be modified, and that certain modifications were then agreed upon, and reduced to writing, and signed as of that date. This agreement was in the words and figures following:

¶ 6. See Contracts, vol. 11, Cent. Dig. § 1665.

"This agreement made at Tonawanda, N. Y., this 26th day of September, 1899, between L. L. Slyfield, sole owner, of Port Huron, Mich., party of the first part, and Dennis Bros., of Grand Rapids, Mich., party of the second part, witnesseth as follows: Whereas, the parties hereto entered into a certain contract in writing, dated March 10, 1899, a copy of which is hereto attached and marked 'Exhibit A,' and are mutually desirous of modifying said agreement, in consideration of the mutual covenants herein contained, the said parties agree as follows: The said Slyfield agrees to send steamer White Star to Muskegon, and there take on cargo of pine and basswood, or other lumber mentioned in Exhibit A, freight on pine, if any, to be at basswood rate,—and agrees to send the Robinson, in tow of White Star, to Manistee; both of said vessels to proceed to said respective ports as expeditiously as possible, and there take on said cargoes and carry same to the port of Erie, Pa., on terms mentioned in said original agreement. It is further agreed that, upon completion of said Erie trip, said barge Robinson shall be released from carrying lumber for the party of the second part for the remainder of the season of navigation, but said White Star may tow the Robinson thereafter, provided the White Star is not materially delayed by such towage, and does not wait for the Robinson more than half a day on the round trip. It is further understood and agreed that the White Star shall not tow any other vessel than the Robinson during the term of the charter, and that neither of said vessels shall load coal for any port where unloading is not usually done with good dispatch, nor for any port beyond the ports where they are ordered from time to time under this contract, nor to other shore of lake. And the said vessels shall not delay more than twenty-four hours to load coal, and shall not go below the port where each cargo is unladen to get an up cargo, and shall not carry any up cargo except coal. It is also understood and agreed that after performance of said Erie trip the White Star shall continue in performance of and under said charter for the remainder of this season of navigation, and shall make as many trips as possible under the said conditions, and carry as much of said lumber as her capacity will permit. On or before arrival at port of discharge with each lumber cargo, the parties of the second part will notify party of the first part, or the master of the White Star, where said vessel shall go for her next cargo, and the parties of the second part agree to provide cargoes at the port or ports so designated. It is further agreed by the party of the first part that the White Star shall not tow the Robinson beyond the port where the White Star is to load lumber on the up trip, nor beyond the White Star's port of discharge on the down trip. One additional barge may be towed whenever written consent of second party is obtained in advance. Parties of the second part agree to deliver lumber on rail at Manistee and Muskegon. Witness our hands the day and year first above written.

"[Signed]                                                L. L. Slyfield,
                                                         "Dennis Bros."

It is then averred that something was done under this modified agreement, but that respondent again breached the contract, and failed and refused to carry out same, greatly to the damage of the libelants, etc.

The learned district judge sustained a demurrer filed to this libel, so far as it sought to recover for damages accruing prior to September 26, 1899, for want of mutuality in the contract set forth, and to so much of the libel as counted upon the contract of September 26, 1899, because the breaches were not sufficiently shown, but gave leave to the libelants to file an amended libel. This they did within the time allowed. To this amended libel an "exception" was filed, based on the grounds that the amended libel was not within the leave granted to amend, but was outside the authority granted. This exception was sustained upon the ground that the libelants stated a contract wholly oral, whereas the original libel had declared upon two written contracts, and that libelants had by this pleading made a new case altogether. The "amended libel" was dismissed without prejudice to the rights of appellants to bring a new suit for the same cause stated in the amended libel. From this decree the libelants have appealed, and assigned error not only upon the action of the court in dismissing the amended libel, but to the action of the court in sustaining the demurrer to the original libel.

G. L. Canfield, for appellants.

Herbert K. Oakes, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

1. The appellees have insisted that we cannot look into the action of the court below in sustaining the demurrer or exception filed to the original libel, because the appeal was not allowed until more than six months thereafter. The transcript does not show that any decree whatever was entered either sustaining or overruling the exceptions to the original libel. But assuming the decree to have been entered in accordance with the opinion filed February 1, 1901, it was not a final decree, for it gave libelants leave to file an amended libel, of which they availed themselves. Subsequently an exception was filed to this amended libel, and the libel dismissed. This was the only final decree, and an appeal from it brings up for review all interlocutory decrees in the cause.

2. The objection to the written contract of March 10, 1899, is that it is lacking in mutuality. The only part thereof which bears upon the question of mutuality is in these words:

"Whereas, said parties of the second part are desirous to ship by vessel certain lots of hardwood lumber, party of the first part agrees to carry on the above-named boats any or all of this lumber, as may be desired by the parties of the second part from time to time during the season of navigation of 1899, at the following prices, etc."

It is not contended by the learned proctors who represent the libelants that this writing of and by itself obligates the libelants to ship even a single cargo of lumber by the vessels named. The respondent thereby agreed to carry at a price named all the lumber which the libelants might from time to time during the season deliver to him for carriage, but it does not oblige the opposite party to do more—even by implication—than to pay him the prices named for the carriage of all lumber delivered for carriage during the season. The writing is therefore void for want of mutuality. Dorsey v. Packwood, 12 How. 126, 13 L. Ed. 921; Oil Co. v. Kirk, 15 C. C. A. 540, 68 Fed. 791; Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145. It is only when the contract has been executed, and the defendant thereby benefited, that he can be held bound by such a unilateral contract. This want of mutuality on the face of the writing libelants have endeavored to cure by averring in their libel that the respondent was advised before the making of said contract that they "had and expected to have a large quantity of lumber, to wit, about fifteen million feet, which they desired to have transported by vessel during the season of 1899," etc., and that, knowing this fact, the respondent applied to them for a contract to carry their lumber during said season, and that thereupon the parties entered into the agreement of March 10, 1899. It is then further averred "that at the time of making said contract, and in consideration of the agreements therein contained, they promised said Slyfield to ship said lumber by said vessels, and to pay him the freight

in said contract mentioned for the carriage thereof," etc. Without this promise the writing was not obligatory upon either party. Can this term be added to or interpolated in the contract? It is doubtless true that libelants expected to ship their entire season's lumber by respondent's vessels, and that they expected to have for shipment during the season about 15,000,000 of feet. The respondent doubtless shared in these expectations, and expected to carry for the libelant the amount of lumber named. But it is well said in Knox v. Lee, 12 Wall. 457, 20 L. Ed. 287, and quoted with approval in Maryland v. Railroad Co., 22 Wall. 105, 112, 22 L. Ed. 713, that:

"There is a well-recognized distinction between the expectation of the parties to a contract, and the duty imposed by it. Were it not so, the expectation of results would always be equivalent to a binding engagement that they should follow."

The plain construction of the writing which the parties mutually signed left it wholly optional with the libelant whether they would ship "any or all" of the certain lots of lumber referred to by the vessels of the respondent. Evidence of an oral agreement made at the time this writing was made, by which this option is converted into an obligation to ship all of the said lumber by the respondent's vessels, is to vary and contradict the writing, and is on this ground incompetent. Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Forsythe v. Kimball, 91 U. S. 291, 23 L. Ed. 352; Maryland v. Railroad Co., 22 Wall. 105, 22 L. Ed. 713; Thompson v. Insurance Co., 104 U. S. 252, 26 L. Ed. 765; Union Stock Yards & Transit Co. v. Western Land & Cattle Co., 7 C. C. A. 660, 59 Fed. 49, 57. The meaning of the writing signed by the parties is not in doubt. The optional character of the agreement, so far as it affects the libelant, is indisputable. The contention that the surrounding circumstances may be looked to in aid of the interpretation of a writing does not apply. We may read a contract in the light of surrounding circumstances for the purpose of arriving at the meaning and intent of the writing. It is as an aid to interpretation that we may look to surrounding circumstances, but never for the purpose of adding a new term, or contradicting or varying the writing. Maryland v. Railroad Co., 20 Wall. 105, 22 L. Ed. 713; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Greenfield, Ev. § 277; Union Stock Yards & Transit Co. v. Western Land & Cattle Co., 7 C. C. A. 660, 59 Fed. 49, 57. In the case last cited, Judge Jenkins, speaking for the Seventh circuit court of appeals, said:

"But resort to surrounding circumstances is not allowed for the purpose of adding a new and distinct undertaking. Maryland v. Railroad Co., 22 Wall. 105, 22 L. Ed. 713. The circumstances surrounding the making of a contract is one thing. The parol negotiations leading up to the written agreement is another and a different thing. Parol evidence may be received of the existence of an independent oral agreement, not inconsistent with the stipulations of the written contract, in respect to a matter to which the writing does not speak, but not to contradict the contract."

There may be instances in which a contract is partly in writing and partly oral, and the two together constitute the contract; so there may be a question of fact as to whether the written agreement is or is not the entire agreement. Illustrations of such cases are

afforded by the cases of Railway Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527, and Bank v. Cooper, 137 U. S. 473, 11 Sup. Ct. 160, 34 L. Ed. 759, where the question was whether a bill of lading constituted the entire contract. But here both parties have signed the contract of March 10, 1899. It purports to be the agreement between the parties, and speaks conclusively the conclusion to which the parties to it have arrived. The oral promise related to a subject upon which the written contract spoke, and varied the terms of the writing in a most important particular. It was therefore, upon a very elementary principle, not competent to contradict the writing by an oral agreement contemporaneous with or antecedent to it. All of the negotiations prior to the execution of the writing are, in the absence of fraud, accident, or mistake, merged into the written agreement, and it is not competent to prove such negotiations for the purpose of adding a term which would vary or contradict the conclusion arrived at as shown by the writing. Neither can the writing of March 10, 1899, be regarded as a proposition made by the respondent to the libelant which might become a binding agreement upon both parties by acceptance by the libel. The agreement in question was that of both parties, and it was not a proposition for a contract. Its validity must be determined by the stipulations contained when it was signed. A subsequent agreement by the libelants to ship all of their season's purchases of lumber by the vessels of the respondents would be at variance with the agreement as written. The conclusion we reach is that there was no error in sustaining the demurrer to the original libel so far as that libel sought to recover for any breach of the agreement between the parties prior to September 26, 1899.

3. A different case is presented by the libel so far as it seeks to recover for the breach of the agreement made September 26, 1899. That agreement was in itself a new contract, and operated in futuro. It did not pretend to operate retroactively, so as to give to the libelants a right to hold respondent for his refusal to carry out the agreement of March 10, 1899. True, it is spoken of as a modification of the previous agreement. But if the previous agreement would not support an action for a breach, it is clear that the modification thereof by the agreement of September 26th would not make a breach actionable which had not been so theretofore. Neither is the want of mutuality in the agreement of March 10th of any importance as a defense for a breach after the new agreement became effective. The contract of September 26th must be regarded as an agreement operative from its date, and affected by the prior contract only so far as the terms of the former are affirmatively or by necessary implication made a part of the new agreement. One of the grounds of the so-called exception to the original libel was that the libel did not "set forth any facts showing wherein this exceptor failed, neglected, or refused to carry out and perform the terms of said alleged contract." The exception is in fact a demurrer. It goes to the whole libel, and is therefore bad if any breach is well pleaded. A demurrer is an entirety. It cannot be bad in part and good in part. If any part of this libel is good, the demurrer, improperly called an "ex-

ception," which challenges the particularity with which the breaches have been alleged, is bad, as going to the whole libel. Bates, Fed. Eq. Prac. § 206. It is very distinctly averred that the respondent laid up his vessels on November 15th, and refused to further perform. This is a very plain and explicit statement of one breach, and we need go no further. The demurrer was improperly sustained.

The objection chiefly urged against the libel so far as it counts upon this new contract was that the contract makes it the duty of the libelants to notify the owner of the White Star, or her master, where to go for her next cargo, and that it is not sufficiently averred that such notice was given. The libel does aver "that they have at all times performed all that was required of them under the foregoing" contract. This, we think, is sufficient. If it is true, they gave the notice required.

Whether the libelant was sufficiently explicit in stating the breaches of the contract of September 26th, we need not consider. If not, it was amendable, and leave was given to amend in these matters. The libelants, instead of amending by averring the breach of the contract of September 26th, filed an amended libel counting upon an alleged contract of March 10th, amended September 26th, according to its supposed legal effect and meaning, and without averring whether same was in writing or oral. As the contract was one which was not required to be in writing, this was perfectly legitimate as a matter of pleading. But the leave given to amend was intended to permit amendments setting out more fully the breaches of the contract of September 26th, and the amended libel was an abuse of the leave given. The amended libel was a clear effort to avoid the effect of the previous ruling that the contract of March 10th was void for want of mutuality, and could not be enlarged by proof of an oral agreement by the libelants to ship all of their lumber by the vessels of respondent, and in this was beyond the leave granted to amend.

The error of the court below was in dismissing the entire original libel. The libel was maintainable so far as it counted upon the breaches of the agreement of September 26, 1899. Some, at least, of these breaches were sufficiently pleaded, and the demurrer or exception for want of definiteness was too broad. The decree dismissing the libel must be reversed, and the cause will be remanded; and the district court may, if it see fit, direct the libelant to reform his libel so as to declare only for damages sustained after September 26, 1899, and to particularize the several breaches. If the libel be thus reformed or recast, the respondent should have leave to plead, demur, or answer as he may be advised. The costs of this appeal will be divided.