TWEEDIE TRADING CO. v. PARLIN & ORENDORFF CO.

(Circuit Court of Appeals, Seventh Circuit. January 8, 1913.)

No. 1,883.

CONTRACTS (§ 10*)—VALIDITY—WANT OF MUTUALITY.

A contract of affreightment, requiring defendant to furnish for shipment from 150 to 200 car loads of farm implements within the ensuing year and plaintiff to transport the same in its vessels from New York to certain South American ports at rates of freight specified therein, which provides that the "bulk" of the shipments shall be subject to plaintiff's call during a specified three months of the year, terminating 10 days before its expiration, is unilateral and not enforceable as an executory contract against defendant for want of mutuality, since it leaves defendant without the right to require the carriage of any definite quantity at any time during the year, unless within the last 10 days.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*

Mutuality in contract, see note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543.*]

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

Suit in admiralty by the Tweedie Trading Company against the Parlin & Orendorff Company. Decree for respondent, and libelant appeals. Affirmed.

The appellant, Tweedie Trading Company, filed their libel in personam against the appellee, Parlin & Orendorff Company, to recover damages for breach of an alleged contract of affreightment, and this appeal is from a decree dismissing the libel on final hearing of the issues.

The written instrument in suit is dated New York, February 6, 1906, partly typewritten and partly printed, on a printed form used by the appellant for affreightment proposals, and reads:

[The type-written matter referred to in the opinion, is set out in Italics.]

COPY

The Tweedie

LINE OF STEAMERS

BRAZILIAN PORTS,

—COLON—

ALSO WEST INDIES AND MEXICAN PORTS.

Freight Contractors for all parts of the World.

Trading Company's

TO SOUTH AMERICA.

RIVER PLATE PORTS

**NOTICE.—THE COMPANY ASSUMES NO RESPONSIBILITY FOR ANY REFUSALS GIVEN THAT ARE NOT ISSUED ON THIS REFUSAL FORM AND THAT ARE NOT SIGNED BY ONE OF THE COMPANY'S OFFICERS.**

SIGNED IN DUPLICATE, AN ORIGINAL BEING HELD BY BOTH PARTIES.

NEW YORK, Feb. 6th, 1906.

*Messrs. Parlin & Orendorff,    Canton, Ill.*

DEAR SIRS:—

*We confirm contract for freight room, for cargo as stated below, for shipment on the Steamer .......... or by a steamer or steamers to be named later, shipment in whole or part cargo, via port or ports in or out of customary and/or geographical order at Steamers option.*

*Bulk shipments at The Tweedie Trading Co.'s call for November December 1906 and January 1907.*

Cargo as follows:

| | Port of Loading | Port of Destination |
|---|---|---|
| ......Barrels of...............at.............per Bbl. | | |
| ......Bbls. of Rosin...........at.............per 280 lbs. Intaken weight. | | |
| ......Superficial feet of......at.............per 1000 Super. ft. Intaken measurement. | | |
| ......Cases Kerosene...........at.............per case. (not to exceed two cubic feet of measurement.) | | |
| ......Cases....................at.............per case. | | |
| ......Cases....................at.............per cubic foot or.........per 100 lbs. Steamers option. | | |
| ......Cubic feet of............at.............per cubic foot or.........per 100 lbs. Steamers option. | | |
| ......Cubic feet of............at.............per cubic foot or.........per 100 lbs. Steamers option. | | |
| ......Tons of..................at.............per ton of 2,000 lbs. | | |
| ......Tons of..................at.............per ton of 2,240 lbs. | | |

*150 to 200 cars Agricultural Implements (each car containing about 3,000 cu. ft. of cargo, and cargo weighing about 30,000 lbs. per car) for shipment from New York to Buenos Aires and Rosario; rate on Buenos Aires shipment 11 cents per cu. ft. steamer's option 22 cents per 100 lbs. and Rosario cargo 14 cents cu. ft. steamer's option 28 cents per 100.*

It is specially understood and agreed that all shipments are made subject to the terms and conditions contained therein are made a part of this Contract. All lighterage at risk and expense of the cargo. FREIGHT TO BE PREPAID on the signing of Bills of Lading, at NEW YORK and earned steamer and/or goods lost or not lost at any stage of the transit.

THE TWEEDIE TRADING COMPANY engages to declare a Steamer or Steamers on this contract later. The understanding is, that said Steamer or Steamers in order to be a good delivery on this contract, must be in a position when declared, barring accidents, and unforeseen detention to reach loading port within the dates provided under this contract. The Tweedie Trading Company has the privilege of ordering the Steamer to proceed to loading port, via a port or ports in or out of customary and/or geographical order. If before shipment of cargo, the steamer designed to carry it is lost, the Tweedie Trading Company shall not be liable to carry the goods pursuant to this contract. The Tweedie Trading Co. however reserves the right within ten days after the known loss of the declared steamer, to substitute another steamer in place thereof. ... days, if required by shippers not to count before Feb. 10th, 1906.

*Shippers option of cancelling, if Steamer not ready to receive cargo, by 6 P. M. on Feb. 10th, 1907.* The Tweedie Trading Company has the option of discharging loading and/or discharging berths. If The Tweedie Trading Company does not avail itself of this option, the consignor and/or consignee to supply berths immediately upon the readiness of steamer to load and/or discharge.

*We accept and confirm the contract.*

*By authority from Messrs. Parlin & Orendorff.*

*(Sgd.)    International Freight Bureau, New York By E. J. Foche.*

Yours very truly,    The Tweedie Trading Co.,

(Sgd.)    By M. Stanley Tweedie, President.

Frederick A. Brown, of Chicago, Ill., and Sherwin A. Hill, of Detroit, Mich. (Charles B. Warren, Wm. B. Cady, Sanford W. Ladd, and Jos. G. Hamblen, Jr., all of Detroit, Mich., and Ralph James M. Bullowa, of New York City, of counsel), for appellant.

Charles E. Kremer, of Chicago, Ill. (Frank T. Miller and John M. Elliott, both of Peoria, Ill., of counsel), for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The appellant-libelant is a New York corporation, operating lines of steamers, with several steamers plying between New York and the South American ports of Buenos Ayres and Rosario, and filed its libel in personam for recovery against the appellee, an Illinois corporation and manufacturer of agricultural implements, for nonperformance of an alleged executory contract of affreightment. The agreement in suit purports to be made in New York, on February 6, 1906, between the appellant, as carrier, and the appellee, as shipper, with "International Freight Bureau" purporting to be the representative of the appellee in its execution. It is in the form of a letter written by the appellant, on one of its printed forms, applicable only in part to the matters involved, addressed to the appellee, with an acceptance underwritten by the above-mentioned "Bureau," which was a shipping agency maintained in New York by the "National Association of Manufacturers," of which the appellee was a member. Its terms resulted from negotiations for rates on shipments contemplated by the appellee of agricultural implements for South American trade, to aggregate 150 to 200 car loads, and its provisions involved in the controversy read as follows:

"We confirm contract for freight room for cargo as stated below" on "steamers to be named later, shipment in whole or part cargo, via port or ports in or out of customary and/or geographical order at steamer's option, bulk shipments at the Tweedie Trading Co.'s call for November, December 1906 and January, 1907, 150 to 200 cars Agricultural implements (each car containing about 2,000 cu. ft. of cargo, and cargo weighing about 30,000 lbs. per car) for shipment from New York to Buenos Ayres and Rosario," at rates named.

"The Tweedie Trading Company engages to declare a Steamer or Steamers on this contract later. The understanding is, that said Steamer or Steamers in order to be a good delivery on this contract, must be in a position when declared, barring accidents, and unforeseen detention, to reach loading port within the dates provided under this contract. The Tweedie Trading Company has the privilege of ordering the Steamer to proceed to loading port, via port or ports in or out of customary and/or geographical order. If before shipment of cargo, the steamer designated to carry it is lost, the Tweedie Trading Company shall not be liable to carry the goods pursuant to this contract. The Tweedie Trading Co. however reserves the right within ten days after the known loss of the declared steamer, to substitute another steamer in place thereof. Lay days, if required by shippers, not to count before Feby. 10th, 1906.

"Shippers option of cancelling, if Steamer not ready to receive cargo, by 6 p. m. on Feb. 10th, 1907. The Tweedie Trading Company has the option of designating loading or discharging berths. If the Tweedie Trading Company does not avail itself of this option, the consignor and/or consignee to supply berths immediately upon the readiness of steamer to load and/or discharge."

After the making of the contract, the appellee forwarded two consignments: One small lot early in May, for which the appellant had no steamer in readiness and agreed with the "Bureau" agency upon its shipment through another line; and the other, two car loads on May 15th, which the appellant forwarded in purported compliance with the contract. No other consignments were sent or tendered to the appellant, and in October the appellee notified the appellant, in effect, repudiating any obligation to make shipments and declining to forward goods under the alleged contract; nor was any steamer "declared" or tendered by the appellant, to receive shipments under the contract, prior to the above-mentioned notification.

The libel therefore predicates recovery for the alleged breach on the contentions that this contract was either authorized or ratified by the appellee and became operative as a mutual executory obligation for shipment of the entire amount of goods therein mentioned. Defenses are set up, in substance: (1) That the agreement was neither authorized nor ratified by the appellee; (2) that it is invalid because the appellant secretly promised the representative of the appellee in its procurement a commission of $2\frac{1}{2}$ per cent. on all shipments made thereunder; and (3) that it is without force for want of mutuality. On final hearing of the issues the trial court dismissed the libel—no specification of the ground thereof appearing of record—and it is obvious that any one of these defenses, if well supported, must defeat recovery and uphold the decree.

We believe the first-mentioned defense to be untenable, as authorization of the agreement appears under the undisputed facts. The second defense raises an issue not free from difficulty in its solution under the evidence, were decision thereof needful. Promise of the commission to be paid the New York agency, unknown to the appellee, is established of even date with the making of the contract in suit; but evidence is introduced on behalf of the appellant of a well-recognized general custom in New York for "shipping brokers" to be paid such commission by the shipping line with which a contract is made through the broker. Whether this evidence is applicable to the instant agency and transaction, and whether the contract in suit may be avoided because of such arrangement, are questions not requiring answer, under the interpretation which must be placed, as we believe, upon the terms of the shipping contract.

The agreement was unmistakably made upon an understanding between the parties that the appellee was to furnish, for shipment during the ensuing year, the aggregate amount of goods mentioned, and its obligation to forward the goods accordingly may rightly be implied from its acceptance thereof, although not expressed in terms, provided the appellant's promises therein are commensurate with such purpose. Without clear undertaking, however, on the part of the appellant for shipment of the goods when so furnished, no consideration exists for any agreement (express or implied) for future deliveries on the part of the shipper. The test, therefore, of enforceability of the contract, must rest on the terms of obligation assumed by the appellant in framing the instrument. Although the typewritten portions are stated with abbreviations and crudeness, we are impressed with no doubt as to

their meaning except for the uncertainty introduced by the above-mentioned provision in reference to the "bulk" of the shipments to be made in November, December and January. That the terms "bulk shipments," as thus used refer, to a large portion or "bulk" of the aggregate shipments contemplated for carriage during the contract-year, is undoubted. If it was intended by this provision to leave no substantial share of the entire amount within the right of the shipper (appellee) to exact shipments thereof whenever goods were forwarded during the other months of the year, the agreement was plainly unilatral and void for want of mutuality. It would thus place performance of the essence of the executory affreightment contract "at the Tweedie Trading Co.'s call," entirely subject to its option.

On behalf of the appellants it is contended that the purpose and meaning of this provision was "to exact tenders of cargo" to the extent of such "bulk" only, to be carried during the three months referred to, and that it was open to the appellee to have the shipments forwarded during the other months of the year free from such provision. The interpretation thus sought, however, is without force, as we believe, to render the contract enforceable against the appellee for refusal to make shipments thereunder.

Laying aside the above-mentioned objection, for want of obligation to accept and forward substantially all consignments embraced in the contract, and assuming the foregoing contention to be tenable, the amount or amounts of goods thus left open for shipment during other months of the year were uncertain, with no standard or means provided to make certain any portion not subject alone to the appellant's call or option. It goes without saying that the quantity embraced in the term "bulk" is not ascertainable with sufficient certainty to be set apart in advance, for reservation to comply with "calls" for shipment thereof during the three months period. The indefiniteness and uncertainty so created leaves no enforceable obligation in favor of the appellee for the assumed residue of shipments intended for other months. In other words, no definable rights were conferred to require "freight room" to be furnished between February 10th and November 1st, when the appellant's option became operative, and the few days remaining after such option expired were plainly insufficient to be of substantial benefit for completion of shipments not called for under the option.

Under either view of the contract, therefore, its provisions are unilateral and cannot be enforced for unexecuted portions thereof. See Oakland Motor Car Co. v. Indiana Automobile Co., 201 Fed. 499, decided by this court at the present term; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696; Dennis v. Slyfield, 117 Fed. 474, 54 C. C. A. 520; American Cotton Oil Co. v. Kirk, 68 Fed. 791, 15 C. C. A. 540.

We are of opinion, accordingly, that the libel was rightly dismissed, and the decree of the District Court is affirmed.