Argued November 1, affirmed December 19, 1916.

# COLVIN *v.* GOFF.*

(161 Pac. 568.)

**Evidence—Parol Evidence—Failure of Consideration—Conditional Delivery.**

1. The rule that parol evidence cannot be introduced to contradict or vary the terms of a written instrument excludes all evidence between the maker and payee of the note that the liability of the former should be conditional, unless the condition affects the consideration, so that as a result of its failure there is a total or partial failure of consideration.

**Evidence—Parol Evidence—Failure of Consideration—Advances of Money.**

2. Where one of several defendants jointly indicted for a crime, who had been acquitted, advanced to another, who had been convicted, money to enable the latter to prosecute his appeal, taking a note therefor, parol evidence is not admissible to show an agreement that the makers should be liable on the note only in case the conviction was reversed, since that condition did not affect the consideration for the note, and, if considered as a collateral contract, was void for want of consideration.

[As to parol evidence of conditions in notes and bills, see note in 128 Am. St. Rep. 609.]

From Grant: DALTON BIGGS, Judge.

In Banc. Statement by MR. JUSTICE McBRIDE.

This is an action by Ben Colvin against Lester Goff and Jim Clark to recover the amount due upon a promissory note. The note is in the usual form, payable upon demand, with the ordinary provision for interest and for attorney's fees in case of suit.

The answer, which is too lengthy to be inserted, admits the execution of the note, and sets up the following affirmative defense: That in May, 1913, plaintiff, defendants and J. B. Gingles and Monard Fix were jointly indicted by the grand jury of Grant

---

*On the general rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

REPORTER.

County for cattle stealing; that plaintiff and defendants were arrested upon said charge on May 24, 1913; that on November 22d the defendant Goff was duly convicted, and that on the 23d of November the indictment was dismissed as to the defendant Clark; that thereafter, in December, 1913, the defendant Goff being desirous of appealing to the Supreme Court from the judgment of conviction against him, the plaintiff agreed to advance to the defendants, Goff and Clark, the sum of $600, to be applied by the defendant Goff to the payment of the expenses of said appeal, and to further advance to defendants the sum of $400, making $1,000 in all which the defendants were to repay, share and share alike, and it was further mutually agreed in the event that the judgment of the Circuit Court should be affirmed that the said sum of $600 was not to be repaid to plaintiff; that in August, 1912, plaintiff delivered to defendant Jim Clark $100, with instructions to deliver said sum to J. B. Gingles and Monard Fix, the codefendants with plaintiff and defendants in the criminal action, and that defendant delivered the $100 as directed; that on May 16, 1914, the defendants and plaintiff entered into a final contract whereby it was agreed that these defendants would make, execute and deliver to plaintiff the promissory note sued upon, conditioned by said contract that said promissory note would become a binding contract on the part of defendants only in the event that the Supreme Court would reverse the judgment of the Circuit Court against defendant Goff, and it was then mutually agreed that, if said judgment should be affirmed, the said note should become void and of no effect, and that defendants, in pursuance of said agreement, executed the note in suit, and that the $700 mentioned therein is the same $600 advanced

to defendants by plaintiff, together with the $100 delivered by plaintiff to Clark; that on June 9, 1914, the Supreme Court affirmed the judgment against defendant Goff; that in accordance with the agreement between plaintiff and defendants the note became null and void and of no effect, and the consideration thereof failed; and that at no time since its execution has the same been a binding contract upon the part of defendants to pay plaintiff the sum of $700 or any sum.

The new matter being denied by a reply, the case came on for trial. The plaintiff introduced the promissory note and rested. The defendants offered evidence tending to prove the new matter alleged in the answer, but upon objection the testimony was excluded by the court upon the ground that such matter did not constitute a defense. There was a verdict for plaintiff, and defendants appeal.      AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. A. D. Leedy.*

For respondent there was a brief over the names of *Mr. J. Roy Raley, Mr. Errett Hicks* and *Mr. Otis Patterson,* with an oral argument by *Mr. Raley.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. While the amount involved here is comparatively small, the question presented is interesting by reason of apparent variance in the decisions of many of the courts, although these seeming contradictions disappear upon a close analysis of the decided cases. It is an elementary general rule that parol evidence cannot be introduced to contradict or vary the terms

of a written instrument, and this rule applies as well to promissory notes as to other written contracts: *Burnes* v. *Scott*, 117 U. S. 582 (29 L. Ed. 991, 6 Sup. Ct. Rep. 865); *Kelsey* v. *Chamberlain*, 47 Mich. 241 (10 N. W. 355); *Whitwell* v. *Winslow*, 134 Mass. 343; *Cooper* v. *German Nat. Bank of Denver*, 9 Colo. App. 169 (47 Pac. 1041); *Davis* v. *Stout*, 126 Ind. 12 (25 N. E. 862, 22 Am. St. Rep. 565); *Prescott* v. *Hixon*, 22 Ind. App. 139 (53 N. E. 391, 72 Am. St. Rep 291); *Graves* v. *Clark*, 6 Blackf. (Ind.) 183; *Getto* v. *Binkert*, 55 Kan. 617 (40 Pac. 925); *San Jose Savings Bank* v. *Stone*, 59 Cal. 183. See note to Section 81a, Daniel, Neg. Instruments. This rule has been applied in cases very similar to the one at bar. Thus in *Foster* v. *Jolly*, 1 Cromp. M. & R. 703, which was a suit to recover against the maker of a promissory note payable 14 days after date, the defense was that the defendant's brother-in-law contracted the debt for which the note was given as agent for a certain co-operative society, and was sued for the amount. The brother-in-law gave the names of certain members of the society who were sued for the debt and a judgment obtained. The brother-in-law also confessed judgment, and was put in jail upon a *ca. sa.*, and gave the note in question upon an alleged promise that its payment should not be enforced in case the plaintiff should recover a verdict against the other members of the society. This was held not a good defense; Lord Abinger, C. B., saying:

"I am of opinion that the evidence tendered by the defendant went to vary the contract appearing on the face of the note. It is not a question of consideration or collateral security. The consideration of the instrument was not impeached, nor was it given as a collateral security, but the defense attempted to be established was in direct contradiction of the terms of the

note. The maker of a note payable on a day certain cannot be allowed to say, 'I only meant to pay you upon a contingency'; that is at variance with his own written contract. The case must be governed by that of *Rawson* v. *Walker.*"

In *Central Savings Bank* v. *O'Connor,* 132 Mich. 578 (94 N. W. 11, 102 Am. St. Rep. 433), which was an action upon promissory notes, the defendant pleaded a collateral agreement very similar to the defense here:

"That the notes were given for the amount of a chattel mortgage which plaintiff held upon the property of the J. R. Pearson Company, which property defendant O'Connor had purchased; that the title to said notes never passed to said plaintiff; that the notes were delivered to plaintiff upon the clear and distinct understanding and condition agreed to by plaintiff that in case the said J. R. Pearson Company should thereafter be forced into bankruptcy by any of its creditors, upon proceedings instituted by them for that purpose, and adjudicated a bankrupt, said notes would thereupon, in the event of the happening of such contingency, become and be null and of no effect, and were not to be paid, and that it was upon said condition said notes were delivered to said plaintiff."

The court said:

"The meritorious question is whether the defense set out in this notice is one which can be established by parol testimony. It is doubtless true, as contended by the appellants' counsel, that it may be shown that a promissory note, unconditional in terms, was conditionally delivered; that is to say, that it was placed in the hands of the payee, but with the distinct understanding that it was not to be operative or to become a binding obligation until the happening of some event: *Brown* v. *St. Charles,* 66 Mich. 71 (32 N. W. 926); *Burke* v. *Dulaney,* 153 U. S. 228 (38 L. Ed. 698, 14 Sup. Ct. Rep. 816). On the other hand, the rule is

firmly established that, where a promissory note for a certain amount, payable at a certain time, is delivered into the hands of the payee, to take effect presently as the obligation of the defendant, parol evidence to introduce conditions or modifications of the terms is not admissible. The case of *Hyde* v. *Tenwinkel,* 26 Mich. 93, illustrates this rule. It was there held that an attempt to show a verbal contemporaneous agreement to reduce a note from an absolute and specific promise to a defeasible engagement was inadmissible. The same rule has been followed: one of the recent cases being *Phelps* v. *Abbott,* 114 Mich. 88 (72 N. W. 3); *Burns & Smith Lumber Co.* v. *Doyle,* 71 Conn. 742 (43 Atl. 483, 71 Am. St. Rep. 235). We think it clear that the present case falls within that line of cases which precludes parol evidence offered to vary the terms of a written instrument. If we adopt the testimony of the defendant as correctly stating the transaction, and more certainly if we adopt the terms of the notice of defense by which the defendant was bound, these notes were delivered to take effect presently, but upon the alleged parol agreement that they were to become void in the event that a certain contingency should happen. This is no more than averring that plaintiff entered into a contemporaneous parol agreement that, while the defendant's obligation bound him to pay absolutely the sums of money at specified times, yet in a certain contingency this sum should not be payable at all, and the notes be redelivered. It is suggested also that there was a total failure of consideration. This cannot be held, for the reason that there was transferred to the defendant, in consideration for the notes, the chattel mortgage and promissory note of the J. R. Pearson Company, which note had indorsers against whom it would be enforceable. There was no absolute and total failure of consideration, and no defense of partial consideration was noticed under the general issue.''

Other cases tending more or less to support the doctrine announced in the case last cited are *Stoddard* v.

*Nelson,* 17 Or. 417 (21 Pac. 456) ; *Wilson* v. *Wilson,* 26 Or. 251 (38 Pac. 185) ; *Murray* v. *Kimball Co.,* 10 Ind. App. 184 (37 N. E. 734) ; *Garner* v. *Fite,* 93 Ala. 405 (9 South. 367) ; *Hubble* v. *Murphy,* 1 Duv. (Ky.) 278; *Clanin* v. *Esterly Harvesting Machine Co.,* 118 Ind. 372 (21 N. E. 35, 3 L. R. A. 863). The case of *Wilson* v. *Wilson,* 26 Or. 251 (38 Pac. 185), has some features in common with the case at bar. The defense was that the promissory note in question was, in fact, intended as a mere memorandum, and was not to be paid until the amount thereof was realized from the proceeds of a mine which had been transferred to the defendant. This court held adversely to defendant's contention. Cases which, when casually examined, seem to hold an opposite view, are numerous, but, as we have before observed and shall presently show, the contradiction is more apparent than real, and most of the cases can be harmonized and shown to be subject to a general rule consistent with the safety of commercial paper and with the general rules of law respecting the admission of parol evidence to contradict or vary the contents of written instruments. The case of *Ware* v. *Allen,* 128 U. S. 590 (32 L. Ed. 563, 9 Sup. Ct. Rep. 174), may justly be termed a leading case on this subject. In that case, which was a suit in equity to enforce the payment of two promissory notes for $5,000 each, made in favor of plaintiff by the firm of Allen, West & Bush, the facts were that one T. P. Ware, a brother of plaintiff, was indebted to the defendants for merchandise in the sum of $18,000. His business was conducted by the plaintiff, and was so embarrassed that the debts could not be paid. Plaintiff a year or two before had conducted a business in his own name at the same place, and, being likely to fail, had sold out his business to his brother, but, os-

tensibly as the agent of the latter, continued to manage
and control it. In this condition of affairs plaintiff
visited Allen, West & Bush and represented that his
brother was unable to pay his debts; that his creditors
were becoming impatient; that he himself held two notes
for $5,000 each against his brother; that he desired the
defendants to institute proceedings by attachment to
collect their claim and his own, and for that purpose
proposed that he should transfer his notes against his
brother to them, taking their note for $10,000, and
that, if they would consent to this arrangement, he
would show them sufficient reason for seizing the prop-
erty by attachment. The defendants expressed their
doubt as to the legality of such a course, and said that
they would like to consult their counsel before making
the arrangement, but plaintiff seemed impatient of
this delay, and insisted that in the meantime some-
body else might attach the property and defeat both
their claims; and finally, reluctantly yielding to his
importunities, the defendants took his notes and gave
their own as requested. Before the note was signed
it was distinctly agreed that it was to be of no effect
until defendants should have had an opportunity to
consult their counsel, and he should assure them that
the proceeding was lawful, and the attachment for the
full amount of both claims could be enforced. The
defendants' counsel, upon being consulted, emphatic-
ally disapproved of it, and advised the defendants to
have nothing to do with it or with the notes of W. P.
Ware against his brother. The defendants then sued
and attached for their own debt and collected it. Sub-
sequently W. P. Ware brought a suit in equity, as re-
quired by the law of Mississippi where an attachment
is sought, and the defense above stated was upheld.
Mr. Justice MILLER, after reflecting severely upon the

conduct and motives of plaintiff in procuring the agreement and intimating that the whole proceeding was probably a fraud, said:

"We did not think it necessary to inquire further into the evidence brought to sustain this defense; for we are quite clear that the testimony does establish the agreement alleged by the defendants to have been made at the various interviews between the persons composing the firm of Allen, West & Bush, or some of them, and the plaintiff, at and before the time when they delivered to him the instrument sued on and received from him the two notes made by his brother, T. P. Ware; that the firm were to have an opportunity to consult counsel, upon whom they relied, as to the validity of the transaction; and that, if such advice was adverse, then the instrument given by them was to be of no effect. It also sufficiently appears that they were advised, without hesitation, by the counsel to whom they had reference in those conversations about the agreement, that the transaction was not one that would stand the test of a legal investigation. This is to be considered in connection with the fact that the firm only brought suit for their own claim, and have since returned, or offered to return, the notes of W. P. Ware, which were given him by his brother and delivered to them when the paper was executed. We are of opinion that this evidence shows that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred, and that it is not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or to be ascertained thereafter."

In the case of *Pym* v. *Campbell,* 6 El. & Bl. 370, cited by Mr. Justice MILLER, it appeared that the defendants agreed in writing to purchase an interest in

an invention; the agreement being absolute on its face. In an action for breach the defendants showed that, when the negotiations had progressed so far that the price had been agreed upon in case defendants concluded to buy, a meeting was arranged at which the plaintiff was to explain his invention to two engineers appointed by defendants, when, if they approved, the machine should be bought. At the time appointed the defendant and the engineers attended, but the plaintiff did not appear. The plaintiff finally arrived after one of the engineers had gone. The engineer present approved, and it was proposed that, as the parties were all present, and it might be troublesome to meet again, a paper should then be drawn up and signed which, if the absent engineer approved, should be the agreement, but that, if he disapproved, the paper should not be an agreement. This was done, and the absent engineer upon subsequent inspection disapproved of the machine. The court held the defense good, Mr. Justice ERLE saying:

"I think that this rule ought to be discharged. The point made is that this is a written agreement, absolute on the face of it, and that evidence was admitted to show it was conditional; and if that had been so it would have been wrong. But I am of opinion that the evidence showed that in fact there was never any agreement at all. The production of a paper purporting to be an agreement by a party, with his signature attached, affords a strong presumption that it is his written agreement; and, if in fact he did sign the paper *animo contrahendi*, the terms contained in it are conclusive, and cannot be varied by parol evidence; but in the present case the defense begins one step earlier; the parties met and expressly stated to each other that, though for convenience they would then sign the memorandum of the terms, yet they were not to sign it as an agreement until Abernethie was consulted. I grant the risk that such a defense may be

set up without ground, and I agree that a jury should therefore always look on such a defense with suspicion; but, if it be proved that in fact the paper was signed with the express intention that it should not be an agreement, the other party cannot fix it as an agreement upon those so signing. The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible."

In *La Grande National Bank* v. *Blum,* 26 Or. 49 (37 Pac. 48), the defense pleaded was that at the time of the execution of the note in suit the plaintiff entered into an agreement with defendants whereby defendants were to collect for plaintiff two promissory notes held by plaintiff against one O. N. Ramsay, which it delivered to defendant under an agreement that he would pay over the proceeds if collected, or, if unable to do so, would return the notes, and that the note in suit was given to secure the compliance with said contract, and that defendant had performed his part of the agreement. This was held a good defense, Mr. Justice BEAN saying:

"If the note was given to secure the performance of Blum's contract to collect and pay over to plaintiff the proceeds of the Ramsay notes, or to return them if not collected, and Blum has performed his agreement, such performance would manifestly operate as a failure of consideration."

Another case cited by counsel for defendant is *McKnight* v. *Parsons,* 136 Iowa, 390 (113 N. W. 858, 125 Am. St. Rep. 265, 15 Ann. Cas. 665, 22 L. R. A. (N. S.) 718). In this case the note was given as the purchase price of a cow which was warranted to be a good breeder, and there was an agreement that the note should not be negotiable until the cow should have been bred and have a calf. The payee negotiated the

note before due, and it subsequently turned out that the cow was barren. As between the payee and the purchaser there was an evident failure of consideration, and the dispute arose collaterally as to whether the assignee of the note was an innocent purchaser. It was contended that the agreement of the payee of the note not to negotiate it until the time agreed upon and the failure of the payee to deliver the cow with calf according to the contract constituted such a fraud upon the purchaser as placed upon the assignee of the note the burden of pleading and proving that he purchased the note in good faith and without notice, and this contention was held good; the court saying incidentally that it was competent to show that the delivery of the note was conditioned and that the condition had not been complied with. Many other cases along the same line might be cited, notably *Beach* v. *Nevins,* 162 Fed. 129 (89 C. C. A. 129), re-reported in 18 L. R. A. (N. S.) 288, which contains copious notes citing many decisions sustaining the principal case. See, also, *Excelsior Sav. Fund & Loan Assn.* v. *Fox,* 253 Pa. 257 (98 Atl. 593), reported and annotated in Cent. Law Journal, Vol. 83, No. 16, the notes to which cite many decisions sustaining the main case as well as those opposed or apparently in conflict. From all these decisions we are of the opinion that this general rule may be deduced. It may be shown as between the maker and the payee that prior to the delivery of the note its payment was made conditional whenever the condition or contingency affects the consideration; that is to say, if the maker of the note stipulates that it shall take effect only upon the happening of an event, and the failure of such contingency affects the consideration to the extent that he does not get the value or thing that he has bargained for, it is a good

defense, because there is a failure of consideration, or, if the note is given upon a stipulation that it shall not be effective unless a particular event shall happen, and by reason of a failure of the event to happen the maker does not reap the benefit contemplated by reason of its occurrence, there is a failure of consideration and the stipulation is good. Take the case of *Ware* v. *Allen,* 128 U. S. 590 (32 L. Ed. 563, 9 Sup. Ct. Rep. 174), one of the inducements to sign the note was to facilitate the collection of a debt. The note would not have been signed unless the proposed contract would effectuate that purpose. It was agreed that the contract would not be complete until the makers of the note ascertained from counsel whether the proposed arrangement would effectuate that purpose. The note was not the complete contract, but only one part of the contract. The contract was not to be complete until counsel approved it. He did not approve it, and therefore it was incomplete, and the makers of the note had nothing of value for the note which they had given. In its final analysis, leaving out of consideration the fraudulent practices of Ware and the evident fact that the notes of his brother which he left in the possession of the defendants were collusive and worthless to them, there was a failure of consideration. In the case of *La Grande Nat. Bank* v. *Blum,* 26 Or. 49 (37 Pac. 48), the consideration of the note was a contract to collect and pay over certain moneys to the plaintiff. If the moneys were collected and paid over, there was nothing due the plaintiff and the consideration failed; and it was so held. So also in the case of *Pym* v. *Campbell,* 6 El. & Bl. 370, the contract was incomplete. A part of the contract was that before it became a complete contract, the makers of the note should have the benefit of certain expert advice

which was in itself a thing of value, and that the contract should not be complete until he should obtain such favorable advice. The favorable advice was not given, the contract was not completed, the defendants purchased no machine, and the plaintiff held a note utterly without consideration. If the defendants had advanced money under such circumstances, they could have recovered it back, and by the same token they would not be required to pay a note which was given in lieu of an advancement of money. It seems plain to us that, unless the happening of the alleged contingency or its failure to happen is so intimately related to the transaction as to amount to a failure of consideration, it cannot be pleaded as a defense. Such is the opinion of Mr. Daniel. He says:

"It has been held in a number of cases that a note may be delivered to the payee to take effect only upon a condition precedent, and that default in the fulfillment of such conditions may be shown by parol evidence, and will defeat recovery as between immediate parties. But unless the nonfulfillment of the condition goes to the failure of consideration, this would seem to trench upon fixed principles of law. Evidence of want of consideration is admissible between original parties. 'Every bill or note imports two things: Value received, and an agreement to pay the amount on certain specified terms. Evidence is admissible to deny the receipt of value, but not to vary the engagement.' The cases amply sustain the foregoing views, which seem to us altogether correct. It has been held that it is competent to show by parol that at the time a note was made it was agreed that it should be held for nothing on the happening of a certain event. But unless such event operated a failure of consideration, we cannot perceive upon what principle such a view could be taken. The consideration of contracts in writing is in general open to inquiry, and it is not an infringement of the rule excluding parol evidence to add to, vary or contradict writings, to receive parol

evidence of the actual consideration for the purpose of determining its validity, or its failure, or that from any cause it is sufficient or insufficient to support the contract'': Daniel, Neg. Instruments, § 81a.

In this view of the law let us consider the defense pleaded in the answer here.

2. It is admitted that the defendants received from plaintiff $700 in cash. It is true that it is alleged on behalf of Clark that the plaintiff ''delivered'' to him $100 of the money, and that he ''delivered'' it to Monard Fix, but the pleading artfully evades any allegation that he was acting as the agent or bailee of plaintiff, and is entirely consistent with the fact that he borrowed it on his own account for the purpose of paying or ''delivering'' it to Monard Fix. If such should be the case, perjury could never be predicated upon the falsity of this allegation in the answer. The fact remains that these defendants between them received $700 of plaintiff's money and gave their note for it; that $700 was the consideration for the note. They substantially admit that it was given for a full consideration, but say it was to become void upon a contingency. What is the contingency? ''If the Supreme Court of Oregon affirms the judgment against Goff, the note shall become void.'' This is the allegation in a nutshell. How does this affect the consideration? Not at all. It is not alleged that plaintiff was in any way personally or financially interested in the result of Goff's appeal. His acquittal could cancel no debt or lessen by a single dollar his obligation to plaintiff. It is not alleged that plaintiff wished or urged or procured him to appeal. On the contrary, it is alleged that ''Lester Goff was desirous of appealing from his conviction,'' and that the plaintiff agreed to advance him the necessary money for that purpose. So far as the record

shows, the plaintiff had no more interest in the result of the appeal than any bank would have. It was not a part of the consideration of the note which by its terms went into effect at once and could have been negotiated the next day. There was nothing to be done to make it a complete contract. For the reasons given above the alleged agreement is not even a good collateral contract, as it was entirely without consideration, so that, whether we view it as an attempt to plead a contract not completed or a collateral contract rendering the note void by reason of a condition subsequent, the defense must fail.

The judgment is affirmed.          AFFIRMED.