## DAVID v. ROBERT DOLLAR CO.

(Circuit Court of Appeals, Ninth Circuit. December 15, 1924. Rehearing Denied January 26, 1925.)

### No. 4291.

**1. Evidence ⬌442(1)—Written contract held not subject to be varied by parol evidence.**

Agreement by defendant to incorporate company and lease to it certain properties in consideration of stated amount of common stock *held* sufficiently complete to express the whole arrangement between the parties, but, if otherwise, plaintiff's oral agreement to advance to defendant moneys necessary to procure lease free from incumbrances was so closely connected with the principal transaction and inconsistent with written agreement that oral evidence thereof was inadmissible and counterclaim for breach of written and oral agreements stated no valid ground of relief.

**2. Contracts ⬌221(3)—Failure of rentals from which payment to be made held not to defeat obligation.**

Even though it was agreed that money loaned was to be repaid from rentals under a lease, failure of rentals because of borrower's inability to give a lease did not relieve him of obligation to repay.

**3. Evidence ⬌441(11)—Agreement for repayment from particular fund inadmissible to vary notes.**

In action on notes, evidence of oral agreement for repayment from rentals under a certain lease, which rentals had failed, was inadmissible as varying the notes providing for payment unconditionally on a fixed date.

**4. Pleading ⬌350(1)—Motion for judgment on pleadings treated as demurrer not objectionable practice.**

Though motion for judgment on pleadings is not favored, where motion is treated as demurrer to defective pleading and leave given to amend in proper case, the practice is sanctioned by usage and free from objection.

Bourquin, District Judge, dissenting.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action at law by the Robert Dollar Company against Lester W. David. Judgment on the pleadings for plaintiff, and defendant brings error. Affirmed.

This is a writ of error to review a judgment on the pleadings. Inasmuch as the sufficiency of the answer is the only question presented for our consideration, we will refer to the parties as therein designated.

On April 10, 1920, the plaintiff and the defendant entered into the following written memorandum:

"The Robert Dollar Co., The Robert Dollar Bldg., San Francisco, Calif.—Gentlemen: Confirming our agreement to incorporate the Monarch Lumber Company, and thereafter have it lease and operate the mill now known as the Monarch Mill on the Columbia river, the following is herewith submitted:

"The new company shall have a capital stock of $500,000, divided into 5,000 shares of the par value of $100.00 each; $250,000 of which shall be preferred 8 per cent. cumulative stock, preferred as to assets and dividends, and $250,000 of which shall be common stock. First interest on the preferred 8 per cent. stock shall be paid on July 1, 1920, and thereafter interest shall be paid monthly at the rate of 8 per cent. per annum. The preferred stock shall be subject to retirement, in part or in whole, by the board of directors in such manner, or by such plan as they may deem advisable, at any time, at a price equal to 10 per cent. in excess of its par value; and at least 50 per cent. of all net earnings shall be set aside to be used to retire said preferred stock. The Robert Dollar Company shall subscribe in cash for 1,000 shares of said preferred stock at par, as soon as said Monarch Lumber Company is organized, and thereafter pay for said stock as and when funds are required by the corporation. The balance of the said preferred stock shall remain in the treasury of the Monarch Lumber Company, to be issued thereafter as and when the directors of said company deem it desirable.

"I agree to lease to the new company all of said mill and the premises upon which it stands, together with all personal property (a schedule or inventory of which shall be attached to the lease) located thereon, as part and parcel of the plant and mill according to the terms of that certain lease which has already been prepared and agreed upon between us as satisfactory in form.

"In addition, I agree that the new company shall enter into an agreement with the Robert Dollar Company nominating the last-named company as sole and exclusive sales agent of the new company upon the terms and conditions of that certain agreement of and for said sales agency which has already been prepared and agreed upon between us as satisfactory in form.

"In consideration of my leasing the said

Monarch Mill to the new company, it being understood between us that except for my efforts heretofore exerted herein it would not have been possible to obtain the right to lease said property (which said lease includes an option in favor of the new company to purchase the said mill and the premises upon which it stands, together with the personal property and plant thereinbefore mentioned), I shall receive common' stock of the new company of the par value of $250,000. Of this stock I agree forthwith upon receipt thereof, to assign and transfer to you an amount equal in par value to the sum of $130,000, without any compensation therefor other than that received by me through your entering into this project.

"In addition, within 30 days from the date hereof I agree to obtain an abstract of title and certificate of title from a recognized title insurance or abstract company, authorized to do business in the state of Oregon, showing to the satisfaction of yourselves the title to said property, upon which the said Monarch Mill stands, and the title to the mill itself and plant and all personal property now located thereon to be in myself, free and clear of all claims, liens or incumbrances, except for a first mortgage upon said property in an amount not greater than $100,000.00.

"The organization and formation of the new company shall proceed as soon as practicable, thereafter, and the new company shall be organized under the laws of the state of Oregon or Washington.

"It is understood that the proposed formation and organization of the new company shall be carried on, and the amount of stock hereinbefore mentioned issued, all subject to the laws of the state of Oregon or Washington.

"It is mutually agreed that there shall be three directors—two selected by you and one by myself.

"In the event that this proposal is satisfactory to you, you may evidence your acceptance by signing it on the line left blank for your signature below, and return me the duplicate original of this offer, and it shall constitute a binding agreement between us.

"Yours very truly, Lester W. David.

"Accepted this 10th day of April, 1920.

"The Robert Dollar Co.

"By R. Stanley Dollar, V. P."

Copies of the proposed lease and agency contract were attached.

On May 15, 1920, the defendant made, executed, and delivered to the plaintiff his promissory note for the sum of $15,000, payable on or before one year after date, and on August 2, 1920, a second promissory note for the sum of $10,000, payable on or before one year after date. The present action was instituted to recover the amount of the two last-mentioned notes. The answer consisted of denials, an affirmative defense, and a counterclaim. The affirmative defense set forth the terms of the written memorandum and averred that it was not the intention of the parties to make the written memorandum contain all the terms and conditions of their contract, but only such parts thereof as it was necessary to reduce to writing in order to satisfy the statute of frauds; that, in addition to the written memorandum, it was orally agreed that the plaintiff would advance to the defendant the sum of $140,000 to be used by him in paying off claims, liens, and charges against the mill property, the balance to become the property of the defendant; that the sum so advanced was to be repaid to the plaintiff from rentals received by the defendant from the lease of the mill property and not otherwise, and that the amounts specified in the two promissory notes in suit were advanced and paid to the defendant under this oral agreement. The written memorandum and oral contract were also made the basis of a counterclaim wherein the defendant sought to recover from the plaintiff upwards of $1,000,000. The court below held that the answer stated no defense and granted a motion for judgment on the pleadings in favor of the plaintiff.

Chester A. Sheppard and O. A. Neal, both of Portland, Or., for plaintiff in error.

Ira S. Lillick, of San Francisco, Cal., and Albert B. Ridgway, Everett A. Johnson, and Hugh Montgomery, all of Portland, Or., for defendant in error.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

RUDKIN, Circuit Judge (after stating the facts as above). We will first consider the sufficiency of the counterclaim, as a decision of that question will have a material bearing upon the sufficiency of the affirmative defense. Was oral testimony competent to prove the agreement on the part of the plaintiff to advance the sum of $140,000 to enable the defendant to take up and pay off the claims and liens against the mill property?

"There may be instances in which a contract is partly in writing and partly oral, and the two together constitute the contract; so there may be a question of fact as to whether the written agreement is or is not

the entire agreement. Illustrations of such cases are afforded by the cases of Railway Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527, and Bank v. Cooper, 137 U. S. 473, 11 Sup. Ct. 160, 34 L. Ed. 759, where the question was whether a bill of lading constituted the entire contract. But here both parties have signed the contract of March 10, 1899. It purports to be the agreement between the parties, and speaks conclusively the conclusion to which the parties to it have arrived. The oral promise related to a subject upon which the written contract spoke, and varied the terms of the writing in a most important particular. It was therefore upon a very elementary principle, not competent to contradict the writing by an oral agreement contemporaneous with or antecedent to it. All of the negotiations prior to the execution of the writing are, in the absence of fraud, accident, or mistake, merged into the written agreement, and it is not competent to prove such negotiations for the purpose of adding a term which would vary or contradict the conclusion arrived at as shown by the writing." Dennis v. Slyfield, 117 F. 474, 478, 54 C. C. A. 520, 524.

"Undoubtedly the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 517, 12 S. Ct. 46, 47 (35 L. Ed. 837).

"The second class embraces those cases which recognize the written instrument as existing and valid, but regard it as incomplete, either obviously, or at least possibly, and admit parol evidence, not to contradict or vary, but to complete the entire agreement of which the writing was only a part. Receipts, bills of parcels and writings that

evidently express only some parts of the agreement are examples of this class which leaves the written contract unchanged, but treats it as part of an entire oral agreement, the remainder of which was not reduced to writing. Two things, however, are essential to bring a case within this class: (1) The writing must not appear upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties, for in such a case it is conclusively presumed to embrace the entire contract. (2) The parol evidence must be consistent with and not contradictory of the written instrument." Thomas v. Scutt, 127 N. Y. 133, 138, 27 N. E. 961, 962.

[1] Upon inspection, the written memorandum would seem to be a complete contract in itself, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties. But in any event, the oral agreement on the part of the plaintiff to advance money to enable the defendant to lease the mill property free and clear of incumbrances was so closely connected with the principal transaction as to become part and parcel of it. Furthermore, whether the written memorandum is complete in itself or not, the oral agreement is inconsistent with and contradictory of its terms and conditions. It must be remembered that the plaintiff is not here seeking to recover damages for breach of the written contract, or for breach of an independent oral contract. On the contrary, he is seeking to incorporate the oral contract into the written memorandum, as a basis for the recovery, thereby varying the terms of the written contract and changing entirely the covenants and obligations of the parties. The rule is elementary that this cannot be done, and inasmuch as the defendant admits his inability to perform the contract as written, the counterclaim does not state facts sufficient to constitute a cause of action.

[2, 3] The affirmative defense is likewise deficient, for two reasons: First, because of the admitted inability of the defendant to lease the mill property, the rentals have failed, and the failure of the rentals did not relieve the defendant from the obligation to repay the advances. Second, the oral testimony clearly tends to vary and contradict the terms of the promissory notes. We are not unmindful of the rule that permits a party to show that what purports to be a contract is not in fact so, because of delivery upon an unperformed condition, or the

like; but such is not this case. The defendant is here attempting to prove that he promised to repay the money from a special fund whenever the fund was available, not unconditionally on or before a fixed date, as provided in the promissory notes. That such testimony would vary the terms and conditions of the written instruments does not admit of question.

[4] It is said that a motion for judgment on the pleadings is not favored by the courts, and this is true, if the motion is permitted to cut off the right to amend, thus preventing a hearing on the merits. But if the motion for judgment is treated as a demurrer to the defective pleading with leave to amend in a proper case, as was done here, the practice is sanctioned by usage and free from objection.

We find no error in the record, and the judgment is affirmed.

BOURQUIN, District Judge (dissenting). If the answer involved no more than the alleged oral agreement for loan and payment out of rents to accumulate, I would concur. For defendant carefully pleads the whole as an entire and nonseverable contract, of which the oral part was voluntarily omitted from the written memorandum, apparently complete on its face; and so the latter is conclusively presumed to contain all terms of the contract, is the contract, and is not to be affected by parol.

In addition to cases cited in the majority opinion, see Sund v. Co., 86 Or. 289, 168 P. 303. In respect to the notes, there is a clear distinction and difference between a note delivered but not to become an obligation until the happening of an event, a condition precedent, as in La Grande v. Blum, 26 Or. 49, 37 P. 49, and a note delivered as a present obligation but subject to avoidance by the happening of an event, a condition subsequent, as in Colvin v. Goff, 82 Or. 314, 161 P. 568.

Parol evidence is admissible in the first, but not in the last. Wigmore, Evidence, § 2435. The instant notes are of the last category.

But there is more to the answer. By way of set-off, though labeled counterclaim, it alleges that the entire contract was orally made, rests in parol, and intentionally only part was incorporated in the written memorandum (pleaded in hæc verba) and to avoid the statute of frauds. It also pleads all the oral agreement. But it alleges definitely that defendant duly performed all obligatory upon him, and that plaintiff breached the written memorandum as well

as the oral agreement, to defendant's damage in amount $930,000 in respect to the first and in amount $500,000 in respect to the last. Now, since the written memorandum is the only contract pleaded and provable, the only contract sanctioned by law and cognizable in court, all allegations of the oral agreement otherwise are immaterial in pleading as in proof, are mere surplusage which, not stricken as they ought to have been, are to be ignored. They affect not at all the legal sufficiency of the answer as a set-off by reason of the written and only contract, but impair only its form; they are neither advantage nor prejudice to either party, and neither party will be heard in respect to them. Despite them, defendant can recover upon the written contract. Proof of it alone will maintain his set-off; for the immaterial oral agreement need not be, as it cannot be, proven. And in this would be nothing obnoxious to the principles of allegata et probata, variance, or res judicata. In any case the immaterial need not be proven, and it suffices to prove contracts in legal identity, whether or not proven in fact identity. See Board v. Keene, etc., Bank, 108 F. 515, 47 C. C. A. 464; James v. Goodenough, 7 Nev. 324; Patterson v. Co., 30 Cal. 360; Wallace v. Baisley, 22 Or. 573, 30 P. 432; cases cited, 13 Cor. Jur. 751; 22 Ency. P. P. 533, 537.

The rule is the same even in criminal law. That a litigant improperly mingles immaterial allegations of an oral agreement with a good cause of action upon a written contract, or claims more than his due, is no reason in principle to deny recovery and of what is proven due. A complaint of that nature would be invulnerable to general demurrer, and good as a complaint is good as a set-off.

It is true that defendant contends throughout that the entire contract rests in parol, and that he is entitled to prove it by parol despite the written memorandum. But it is also true that a contention palpably erroneous by mere inspection of the pleading will not justify a court in refusing whatever relief is due upon like inspection. That justly due will not be denied as a penalty for claiming too much. A righteous claim is not to be rejected merely because asserted with erroneous reasons. If the pleading of a litigant discloses that he is entitled to X because 2 plus 2 make 4, he is not to be denied recovery for that his counsel strenuously argues that 2 plus 2 make 5.

In so far as the majority opinion states that the "advance" was to enable defendant to lease the mill property free and clear of

incumbrance, and that there is "admitted inability of the defendant to lease the mill property," I am unable to find anything in the written contract, the lease (also pleaded in hæc verba), or in the answer to warrant it.

The answer alleges that defendant had purchased the mill, was entitled to possession of it, was indebted for part of the price payable in future installments, and that he had exhibited title as the written contract stipulates and to plaintiff's satisfaction. It further alleges that the "advance" was to be used to clear incumbrances, and that in consequence of plaintiff's breach of written contract and oral agreement, defendant some 33 months later was constrained to sell the mill to his damage. And the lease provides that if and when the lessee exercises its right to purchase the mill, defendant will make good and unincumbered title. But in all this is naught impeaching his lawful right and power to lease the mill, or admitting any inability at any material time.

Without more, it is my opinion that in this state of the case, defendant was entitled to trial of his set-off, and that judgment on the pleadings was error.