# BANK OF BRITISH NORTH AMERICA *v.* COOPER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 103. Argued December 5, 1890. — Decided December 22, 1890.

Facts contested in a trial before a jury must be taken in this court to be as determined by the verdict.

The mere receipt of a bill on payment of money is not an assent to the proposition that the bill contains the whole contract between the parties, but whether it is so or not is a fact to be determined by the jury.

A party receiving moneys from another to be transmitted for him to a named destination, in order that they may be used there to pay his liabilities, cannot change the destination at the desire of the party to whom the money is sent, without becoming liable for the loss, in case loss ensues in consequence of the change.

In the relation of principal and agent, strict compliance by the latter with the instructions of the former is an unvarying condition of exemption from liability.

C in New York, who had had business relations with M. & Co. of Glasgow, drew upon them for £5000, to mature February 29. On February 26th he bought of plaintiff in error, who had an office in London, a cable transfer of this amount in favor of M. & Co. to be transmitted in a check by post from London to Glasgow, and took from the bank a receipt " for cable transfer on the Bank of British North America, London, in favor of " M. & Co. " Glasgow." The cable message was accordingly sent, but the London office, under previous directions from M. & Co. as to all such matters, but without knowledge of C, instead of forwarding the check to Glasgow, deposited it to the credit of M. & Co. in the Bank of Scotland in London, which action was approved by M &

Co.  On the 28th or 29th of February M. & Co. suspended.  It was in evidence that on the 28th they applied similar moneys to the payment of similar obligations, and that if the check had been sent by mail as directed, it would have reached Glasgow on the morning of that day in time to be applied to the payment of C's draft.  The Bank of Scotland appropriated the £5000 to the payment of the balance due from M. & Co. to it, and C was obliged to meet his draft.  In an action by him against the Bank of British North America, *Held*,

(1) That whether the bill contained the entire contract between the parties was a question for the jury;

(2) That the bank, having received the money with knowledge that it belonged to C, and that it was to be used in the payment of his liabilities, could not substitute for his instructions the wishes of the party to whom he was remitting the money;

(3) That when his instructions were disobeyed and a loss ensued, that loss would *prima facie* fall upon the bank, and the burden was upon it to show that obedience to the instructions would have produced a like result.

THE case is stated in the opinion.

*Mr. Stephen P. Nash* for plaintiff in error.

*Mr. John M. Bowers* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

This was an action at law, brought by the defendant in error in the Circuit Court of the United States for the Southern District of New York.  The trial resulted in a judgment in his favor, and the defendant there has brought such judgment here on error.  As the case was tried before a jury, contested facts must be accepted to be as alleged by the plaintiff, because resolved in his favor by the verdict.  *Lancaster* v. *Collins*, 115 U. S. 222.

The facts thus established are these: For some years prior to the transaction in controversy, the plaintiff Cooper had had business relations with the firm of Martin, Turner & Co., of Glasgow, Scotland.  In consequence of these relations, he had had frequent occasions to remit money to that firm, and many of such transactions had been carried on through the agency of the defendant.  He had, on December 14, 1883, drawn a

draft on the firm of Martin, Turner & Co. for five thousand pounds sterling, which became due on the 29th of February, 1884. It was his duty to provide funds for the payment of that draft, and the defendant knew that such was his duty. The duty was his; the moneys therefor were his. The defendant had an office in London, as well as in New York. On the 26th of February Cooper called at the office of defendant in New York, and purchased and paid for a cable transfer of five thousand pounds to Martin, Turner & Co. The bill which he received was in these words:

"NEW YORK, *26th Feb.*, 1884.

"W. B. Cooper, Jr., Dr., to the agents Bank of British North America, 52 Wall street, for cable transfer on the Bank of British North America, London, in favor of Martin, Turner & Co., Glasgow, 5000 pounds, at

| | |
|---|---|
| 4.90½ . . . . . . . . . . . . . . . . | $24,525 |
| Cost of cable . . . . . . . . . . . . . . | 2 |
| | $24,527 " |

The cable message was in cypher, and the cyphers theretofore arranged with Cooper represented the following phrases: "Martin, Turner & Co., Glasgow, ac. W. B. Cooper, Jr.," and "Martin, Turner & Co., 3 Market Buildings, 29 Mincing Lane, ac. W. B. Cooper, Jr." Beyond this was an arrangement for transmission by telegraph from London to Glasgow, which involved an additional expense. When Cooper called to purchase this cable transfer, he was asked whether he wished transmission by telegraph or mail, and answered that he wanted a check mailed to Glasgow. So the contract established by the verdict of the jury, in accordance with his testimony, was one for the transmission by mail of a check from London to Glasgow for the five thousand pounds. The cable directing such transfer was sent as ordered; but the London office, instead of forwarding a check to Glasgow, on the 27th of February deposited the amount in the Bank of Scotland, at London, to the credit of Martin, Turner & Co. It did this on the strength of a request communicated to it by Martin, Turner & Co., some months prior thereto, to deposit with the

Bank of Scotland in London all amounts received to their credit. Cooper knew nothing of this request, and relied upon strict compliance with his directions. On the day that the deposit was made with the Bank of Scotland, Martin, Turner & Co. were advised both by wire and by letter thereof, and wrote approving such action. On the 28th or 29th of February, Martin, Turner & Co. suspended in consequence of advices received from India, and the Bank of Scotland appropriated the funds in its possession to the payment of their overdrawn account; so this cabled amount was not applied to the taking up of Cooper's draft, and he was thereafter compelled to pay it. If the money had been sent by mail from London to Glasgow, as directed, the draft would have reached the latter place on the morning of the 28th, and would, as shown by the testimony of some of the members of the firm of Martin, Turner & Co., have been appropriated, as other like drafts then received, to the special purpose for which the transmission was made. In brief, the neglect of the defendant to follow the specific instructions of the plaintiff in regard to the transmission prevented the appropriation of the amount transmitted to the payment of plaintiff's draft, and secured its appropriation to an obligation of Martin, Turner & Co. to the Bank of Scotland. It is true that this disregard of instructions was owing to a special request theretofore made by the payee of the draft; but such special request does not disturb the fact that the instructions of the plaintiff were disregarded, and that he suffered loss in consequence therefrom. It would seem from this general statement that the liability of the defendant could not be doubted. It had no contract with the payee of the draft; its contract obligations were with the sender of the money; and it is the general law of agency that disregard of the explicit instructions of the principal casts upon the agent liability for any loss resulting therefrom.

After the testimony was closed, counsel for the defendant moved to strike from the case all parol evidence tending to affect the legal construction of the bill heretofore quoted, which motion was overruled. The contention now is, that that bill stated the contract with all its terms, and, being in

writing, could not be varied or controlled by parol testimony. But this contention begs the question. The mere receipt of a bill of parcels or bill of lading, on payment of money or delivery of goods, is not necessarily an assent to the proposition that such bill of parcels or bill of lading states the contract and the whole contract between the parties. Such bills may or may not be the contract. They may be nothing more, and intended to be nothing more, than memoranda or receipts. Whether they are the entire contract, or simply in the nature of receipts, is not a question of law for the court, but one of fact for the jury. The case of *Mobile & Montgomery Railway Co.* v. *Jurey*, 111 U. S. 584, is suggestive. There, on a shipment of goods, it was insisted that a bill of lading voiced the entire contract. The trial court opened the door to inquiry as to the terms of the real contract between the parties, and the circumstances under which the bill of lading was given and received, and left it to the jury to determine whether the bill of lading was or was not the contract. The ruling of that court was affirmed by this. We think, therefore, there was no error in denying this motion, and leaving the question of fact to the determination of the jury. Even if inquiry were limited to the bill itself, the description of the place, Glasgow, therein, certainly suggests that delivery was intended at that place, and may not unreasonably be construed as meaning not merely that it was the place of business of Martin, Turner & Co., but also the place to which the money was to be remitted. *Filley* v. *Pope*, 115 U. S. 213.

A further contention of plaintiff in error is this: The contract between the plaintiff and defendant was to deliver five thousand pounds to Martin, Turner & Co., in fact, a delivery was made in the manner and at the place requested by Martin, Turner & Co., and the delivery approved by them; and it is urged that if the money was to go to Martin, Turner & Co., and the defendant was instructed to deliver it to them, it might deliver it to them at any place and in any manner they desired. Whatever force there might be in this argument, if the money belonged to Martin, Turner & Co., it is of no weight, inasmuch as the money belonged

to Cooper, as was known to the defendant, and was sent by him to take up his own paper. The case of *Southern Express Co.* v. *Dickson*, 94 U. S. 549, was properly held by the trial court decisive of this question. 30 Fed. Rep. 171. It is true that that case was one of the consignment of goods; but the principle is the same. There goods belonging to the shipper were handed by him to an express company for transportation to a place mentioned, for delivery there to a person named. At the request of the consignee, the express company made the delivery at another place, in consequence whereof the shipper lost his goods; and the express company was held liable, because, although consigned to a named consignee, they were delivered for transportation to him at a named place; and they were, as known to the express company, the property of the shipper. The failure to obey the specific instructions of the owner and shipper resulted in loss; and it was properly held that the consignee could not interfere with those instructions, and that the company could not recognize him as owner, and obey other instructions than those of the shipper and known owner. So, here, the defendant received these moneys knowing that they belonged to Cooper, and that they were to be used for the payment of his liabilities; and it could not substitute for his instructions the wishes of the parties to whom he was sending the money. It is not the case of one employing the defendant to transfer moneys to a third party, which he owes such third party, in which case the debt of the sender may be discharged whenever the party to whom the money is sent receives it.

Another contention of plaintiff in error is this: Had the money been remitted by mail from London to Glasgow, and reached there on the 28th, how can it be affirmed that Martin, Turner & Co. would have appropriated this money to the payment of the intended draft? Might they not have passed it into the volume of their assets, for equal distribution among their creditors? Of course, no positive affirmation can be made in response. It cannot be absolutely declared that Martin, Turner & Co. would have appropriated the check to the specific purpose intended by the plaintiff. It is true the

testimony of the two members of that firm shows that on the 28th moneys transmitted and received for special purposes were appropriated thereto, and indicates that probably a like action would have attended the check if received on the 28th. But we do not understand that the certainty of a different result must be established; on the contrary, the burden of proof is on the defendant. If positive instructions are disobeyed and loss results, *prima facie* liability for that loss ensues; and the burden is on the defendant, the disobeying agent, to prove that obedience would have brought a like result. The fair conclusion from the testimony is, that obedience would have prevented loss. It certainly cannot be affirmed that the same loss would have resulted if the instructions had been obeyed. There can, as a rule, be little hardship, and there is generally great benefit, in holding an agent bound to absolute compliance with the explicit instructions of his principal. In view of the manifold contingencies of business transactions, and the wide range of possibilities that attend any act of a commercial nature, few things could be more unfortunate than to incorporate into established law the right of an agent to disobey specific instructions, and to make a guess as to results an excuse for relief from accruing loss. Uniform recognition and enforcement of certain settled and clear rules are important. Among them, few are more significant or more essential than that in the relation of principal and agent strict compliance by the latter with the instructions of the former is an unvarying condition of exemption from liability. Loss from disregard thereof must be borne by the agent, unless he establishes that the disregard had no connection with the loss, and that it would certainly have followed whether instructions were obeyed or disregarded.

The verdict of the jury in this case establishes a disregard of instructions. Confessedly, loss resulted, and it cannot be affirmed that the same loss would have resulted if instructions had been obeyed. We conclude, therefore, that the judgment was right, and it is                                        *Affirmed.*

Mr. Justice Gray did not sit in this case and took no part in its decision.