## SHREWSBURY et al. v. DUPONT NAT. BANK.

(Court of Appeals of District of Columbia. Submitted November 4, 1925. Decided December 7, 1925.)

No. 4241.

1. **Banks and banking** ⊙�foⅈ188½—**Bank undertaking to forward credit held liable for its correspondent's failure to obey instructions.**

Bank, receiving check for $1,000 and instructed to comply with cablegram directing drawer of check: "Please pay $1,000 Guarantee Trust Company my credit Disconto Bank, Warsaw, Poland. Kenneth O. Shrewsbury"— *held* to have assumed responsibility for carrying out instructions, and liable for failure of its correspondent to send money through bank directed and to person directed.

2. **Principal and agent** ⊙⟌57—**Agent disobeying instructions is liable, unless he proves that obedience would have brought about same result.**

If agent disobeys principal's instructions and loss results, he is liable, unless he can prove that obedience to instructions would have brought about same result.

3. **Customs and usages ⬳17—Evidence of custom in action for damages for bank's failure to follow directions in transmitting personal credit to foreign country held inadmissible.**

In action against bank, which forwarded credit in Polish marks rather than dollars, called for by cablegram directing that $1,000 be forwarded, evidence of custom among banks of transmitting money in currency of country to which transmission was made *held* inadmissible, there being no ambiguity in cablegram as to manner of transmission.

4. **Banks and banking ⬳188½—Evidence held to conclusively show that same results would not have obtained if bank had followed directions in transmitting credit.**

In action against bank for damages for failure to transmit credit to foreign country through agency and in medium directed, testimony by manager of foreign department of bank designated that, if matter had been handled through such bank, he would either have made transfer as was desired or have asked for more specific directions, *held* to conclusively dispose of defendant's contention that, had it followed directions, same result would have obtained.

5. **Banks and banking ⬳188½—Plaintiff, suing for damages from failure of bank to follow directions in transmitting personal credit, held not negligent.**

In action against bank for damages for failure to follow directions in forwarding personal credit to foreign country, plaintiff *held* not chargeable with negligence in failing to call for credit in name in which it was forwarded other than as directed.

6. **Banks and banking ⬳188½—Bank, receiving cablegram and money to be forwarded to sender of cablegram, held to have entered into contractual relation with him.**

Where addressee of cablegram reading: "Please pay $1,000 Guarantee Trust Company my credit Disconto Bank, Warsaw, Poland," delivered $1,000 and cablegram to bank, with instructions to comply therewith, bank *held* to have entered into a contractual relation with sender of cablegram, and liable directly to him for failure to follow directions.

7. **Banks and banking ⬳188½—Right to recover for bank's failure to follow directions in forwarding personal credit held not affected by matters stated.**

In action against bank for damages for failure to transmit personal credit to foreign country, in accordance with directions contained in cablegram, that recipient of cablegram, who furnished money to be forwarded, heard bank's letter to its correspondent dictated, and later learned that directions contained in cablegram had not been followed, *held* not to affect plaintiff's right of recovery.

In Error to Municipal Court of District of Columbia.

Action by Kenneth O. Shrewsbury and another against the Dupont National Bank. Judgment for defendant, and plaintiffs bring error. Reversed and remanded for new trial.

W. J. Neale and H. B. Caton, both of Washington, D. C., for plaintiffs in error.

A. H. Ferguson and W. P. Houghton, both of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This case is here on error to the municipal court of the District of Columbia. Plaintiffs in error, Shrewsbury and Graves, sued defendant in error, Dupont National Bank, to recover damages alleged to have been sustained through the failure of the Dupont Bank to transmit to plaintiff Shrewsbury in Warsaw, Poland, the sum of $1,000. From a judgment in favor of defendant the case was brought here on writ of error.

It appears that Shrewsbury sent a cablegram to Graves December 1, 1919, from Warsaw, Poland, as follows: "Please pay $1,000 Guarantee Trust Company my credit Disconto Bank, Warsaw, Poland. Kenneth O. Shrewsbury." Graves, a depositor in the Dupont National Bank of Washington, gave the bank a check for $1,000, and delivered the cablegram to the cashier with instructions to comply with Shrewsbury's wishes. The Dupont Bank wrote a letter to its correspondent in New York, the Metals & Mechanics National Bank dated December 1, 1919, as follows: "We have been requested to have the Guarantee Trust Company pay by wire to the Disconto Bank at Warsaw, Russia, $1,000 less cable cost to the credit of Kenneth O. Shrewsbury. We are crediting you to-day with $1,000, and we beg to request that you have this amount cabled at once."

The Metals & Mechanics Bank, instead of having the Guarantee Trust Company transmit the funds as requested, converted $1,000 into Polish marks at the rate of $1.90 per thousand marks, or 52,344 marks. The Metals & Mechanics Bank notified the Dupont Bank by letter that it had made the conversion into Polish marks and that the same had been cabled to the Disconto Bank. The cashier of defendant bank testified that this letter "was shown to Graves a few days after its receipt and he made no objection to it." He further testified "that the Metals & Mechanics National Bank was its New York correspondent and the Guarantee Trust Company was not; that he did not know of a single case of dollar credits before the war; that this custom was modified since the war, when remittance in dollars was

specifically requested." The cablegram, it will be noted, called for the transmission of dollars, not marks. With the cashier's knowledge of the custom since the war, the language used in the cablegram, if ambiguous, was such at least as to put him on inquiry; yet the record is silent as to any inquiry having been made at any time. Whether Graves knew that defendant bank was conducting the matter through the Metals & Mechanics Bank, or not, is of no importance; since he could not, as Shrewsbury's agent, approve of the transmission of the funds through the Metals & Mechanics Bank. His authority was limited, by the letter of the cablegram, to a transfer through the Guarantee Trust Company; and when the cablegram was delivered to defendant bank, and it assumed the obligation of complying with Shrewsbury's request, it was likewise limited to a transfer through the same agency. In any view of the case, defendant bank must be held responsible for the selection of its agent in New York.

Shrewsbury testified that in the early part of 1919 he had an account with the Paris branch of the Guarantee Trust Company of New York; that when he decided to go to Poland he requested the Guarantee Trust Company of New York to give him the name of their Warsaw correspondent; that this was done because he was handling his money from the United States through the Guarantee Trust Company of New York, also his mail, and that he had always the service he required. The Paris branch of the trust company referred him to the Disconto Bank at Warsaw. When he reached Poland he was introduced to a director of the Disconto Bank and through him made his financial arrangements. He opened a bank account and drew checks through the Disconto Bank on the United States. When he needed more money, about December 1, 1919, he went to see the director of the bank and requested his advice on the method of securing money from America. As a result the cablegram here in question was drawn, which he was told would procure the forwarding of American dollar credits by way of the Guarantee Trust Company. He also testified that later he made inquiry of the director of the bank as to whether the money had arrived and was informed that it had not. Inquiry was made on three occasions: January 24, 1920, July 7, 1920, and July 9, 1920. It was not until September, 1920, that Shrewsbury learned that the funds had been transmitted in any form.

[1] When the Dupont Bank accepted the check from Graves, together with the cablegram, it assumed the responsibility of carrying out the instructions conveyed by the cablegram. It became the agent of Shrewsbury, and as such it was bound to comply with the letter of the cablegram in order to relieve itself from liability. Instead of dealing directly with the Guarantee Trust Company, it elected to act through its correspondent in New York, the Metals & Mechanics Bank. It made this bank its agent for this purpose. The Metals & Mechanics Bank, instead of carrying out the instructions of the Dupont Bank to have the money transmitted through the Guarantee Trust Company to Kenneth O. Shrewsbury, converted $1,000 into Polish marks and transmitted them to the Disconto Bank to the credit of K. O. Shrewsbury. It will be observed that the Metals & Mechanics Bank disregarded its instructions in two important particulars: First, in its failure to turn the matter over to the Guarantee Trust Company; and, second, in not sending it in the name of Kenneth O. Shrewsbury.

That the Dupont Bank is liable for the failure of the Metals & Mechanics Bank, its agent, to carry out the instructions, is beyond question. In Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 S. Ct. 141, 28 L. Ed. 722, the court had under consideration the liability of a bank for failure to carry out instructions in respect of certain drafts sent to it for collection. A bank in Pittsburgh sent to a bank in New York for collection certain unaccepted drafts. They were drawn on "Walter M. Conger, Sec'y Newark Tea Tray Co., Newark, N. J.," and were sent to the New York bank as drafts on the Tea Tray Company. The New York bank sent them for collection to a bank in Newark and in its letter of transmission referred to them as drafts on the company. The Newark bank took acceptances from Conger individually and no notice of that fact was given the Pittsburgh bank until after one of the drafts had matured. At that time the drawers and an indorser had become insolvent. It was held that the New York bank was liable to the Pittsburgh bank in such damages as it had sustained by the negligence of the Newark bank; the court considering the rule adopted in many states to the effect that, where a bank is employed to collect a draft payable at another place, where manifestly it cannot be done by the officers or servants of the collecting bank, and it is intrusted to a subagent, the risk

of the neglect of the subagent is upon the party employing the bank, on the theory that he has impliedly authorized the employment of the subagent. In other words, upon those authorities the Pittsburgh bank would have been liable for the actions of the subagent, the Newark bank. The court, however, refused to follow this rule, and adopted the more stringent rule announced in Allen v. Merchants' Bank, 22 Wend. (N. Y.) 215, 34 Am. Dec. 289: "That where a bank, as a collection agency, receives a note for the purposes of collection, its position is that of an independent contractor, and the instruments employed by such bank in the business contemplated are its agents, and not the subagents of the owner of the note."

The court, considering the question of liability where an ambiguity appears in the instructions as in that case, whether the acceptance should be by the company or by Conger individually, or, as contended in this case, whether the money should be transmitted in dollar credits or in marks, said: "The question as to whether the company would have been liable on drafts, if they had been accepted in the terms of the address, is not one on the determination of which this suit depends; nor do we find it necessary to discuss the question as to whether, on the face of the drafts, the company or Conger individually is the drawee. The very existence of the ambiguity in the address, and of the question as to whether the company would be liable on an acceptance in the terms of the address, is a cogent reason why the defendant should not be allowed, without further communication with the holder, to do acts which may vary the rights of the holder, without responding in damages therefor. The risk is on the defendant, and not on the plaintiff."

[2] It is a settled rule in the law of agency that, if the instructions of the principal are disobeyed by the agent and loss results, the agent will be held liable, and the burden is on the agent to prove that obedience to his instructions would have brought about the same result. The rule is well stated in Bank of British North America v. Cooper, 137 U. S. 473, 479, 11 S. Ct. 160, 162 (34 L. Ed. 759), as follows: "In view of the manifold contingencies of business transactions, and the wide range of possibilities that attend any act of a commercial nature, few things could be more unfortunate than to incorporate into established law the right of an agent to disobey specific instructions, and to make a guess as to results an excuse for relief from accruing loss. Uniform recogni-

tion and enforcement of certain settled and clear rules are important. Among them, few are more significant or more essential than that in the relation of principal and agent strict compliance by the latter with the instructions of the former is an unvarying condition of exemption from liability. Loss from disregard thereof must be borne by the agent, unless he establishes that the disregard had no connection with the loss, and that it would certainly have followed whether instructions were obeyed or disregarded."

[3] This brings us to the pertinent question in this case, whether or not a similar loss would have been sustained, had the instructions been carried out and the funds transmitted as directed through the Guarantee Trust Company, instead of the Metals & Mechanics Bank. Evidence was introduced by the defendant to establish a custom among bankers in the transmission of funds to foreign countries to the effect that the custom prior to the war was to transmit it in the currency of the country to which the transmission was made. This testimony was admitted over the objection and exception of counsel for plaintiffs. We think the evidence was inadmissible. The contract entered into by defendant bank for the transmission of these funds was specific, to transfer through the Guarantee Trust Company to the Disconto Bank at Warsaw $1,000 to Kenneth O. Shrewsbury, instead of transferring through the Metals & Mechanics Bank 52,344 marks to K. O. Shrewsbury. There was no such ambiguity involved in the contract as to the testimony relative to any custom prevailing under similar circumstances. "Evidence of custom is permitted for the purpose of qualifying the meaning of a contract where otherwise ambiguous, and of providing for incidents not in contradiction of the fundamental provisions of the contract, and of supplying omissions under certain circumstances which have occurred in the agreement of the parties. Such evidence is not permitted for the purpose of contradicting the agreements which the parties have made, or for the purpose of accomplishing an unfair or immoral construction of their contract." Gravenhorst v. Zimmerman, 236 N. Y. 22, 23, 139 N. E. 766, 770 (27 A. L. R. 1465).

In Camden v. Doremus et al., 3 How. 515, 11 L. Ed. 705, the court had before it the admissibility of evidence concerning custom among banks. The agreement in that case expressly stipulated that the note should be sent to a particular bank, to be

handled in a certain way. This stipulation was violated. The court in its opinion says: "The ruling of the court on this point, we think, was proper. The note was made payable at the Commercial Bank of Columbus; by the agreement between the parties it was, moreover, expressly stipulated that it should be sent to that bank for collection; if, then, any custom or practice other than general commercial usage were to control the management of the note, it was the usage of the Bank of Columbus, certainly not the particular usage of other banks not mentioned in the contract, and perhaps never within the contemplation of the parties to that contract."

[4] This brings us to the only admissible evidence of custom in this case. The manager of the foreign department of the Guarantee Trust Company testified that, if defendant's letter to the Metals & Mechanics Bank had been delivered to him, he "would have done one of two things: Either put the transfer through as a dollar transfer, or asked for more specific instructions." This conclusively disposes of the contention of defendant that, had the matter been transferred to the Guarantee Trust Company, the result would not have been different.

[5] Nor is plaintiff Shrewsbury chargeable with any negligence in calling for the credit at the Disconto Bank. He inquired of the director with whom he had dealt when the cablegram was sent. He called for a credit in the name of Kenneth O. Shrewsbury, and was correctly informed that no such credit was there. Inasmuch as he was expecting a credit in American money, there could be no depreciation, and hence no reason for anxiety on his part. Further than that, he was entitled to treat his account as he saw fit. He might draw it out or leave it there; he might inquire if it was there, or assume that it was there in reliance upon his instructions being carried out. His treatment of the matter at the Disconto Bank has no bearing whatever upon the question of liability in this case.

[6] We are not impressed by the contention of counsel for defendant in error that plaintiff Graves occupies the position of agent of Shrewsbury, and that defendant bank has no privity with Shrewsbury. Had Graves disregarded in any respect the instructions given him by Shrewsbury, or in any particular misrepresented his instructions to the Dupont Bank, or attempted in any manner whatever to direct or control the course to be pursued by defendant bank, we might have a different case; but that is not what occurred. Graves did not deposit $1,000 to the credit of Shrewsbury, with any misleading instructions as to the manner in which it should be transmitted to the bank at Warsaw; but he delivered to the Dupont Bank $1,000, together with the cablegram containing in writing the express instructions of Shrewsbury. Defendant bank accepted the cablegram, which became its chart direct from Shrewsbury. When the bank accepted the obligation of transmitting the money under these conditions, it became the direct agent of Shrewsbury for this purpose, and entered into a contractual relation with him to carry out expressly the instructions contained in the cablegram.

[7] Nor is the testimony of importance to the effect that Graves was present and heard the letter dictated that was sent from defendant bank to the Metals & Mechanics Bank. If Graves heard this letter dictated, he could draw but one conclusion, namely, that defendant was carrying out to the letter the instructions set forth in the cablegram. There was nothing wrong with the letter to the Metals & Mechanics Bank. It stated how the money was to be transmitted, through the Guarantee Trust Company, and directed that it should be so done. This was in strict conformity with the terms of the cablegram. The difficulty lies in the failure of the Metals & Mechanics Bank, the agent of the Dupont Bank, to carry out its instructions.

The fact that some time later Graves had notice that the Metals & Mechanics Bank had sent the money in marks, instead of by dollar credit, is of no importance, since the damage had already been done; and the object, if any there was, of notifying Shrewsbury of the violation of his instructions, for the purpose of mitigating to some extent the loss incurring through the rapid depreciation of marks going on at that time, was upon the Dupont Bank, which had assumed the responsibility of transmitting the funds through the Guarantee Trust Company.

The judgment is reversed, with costs, and the cause is remanded for a new trial.