**SOUTHERN PINE LUMBER CO. v. KING.**

No. 3642.

Court of Civil Appeals of Texas. Beaumont.
July 9, 1940.

Rehearing Denied July 24, 1940.

COMBS, Justice.

This is a suit for damage for breach of a written contract wherein plaintiff (appellee here) alleges that defendant (appellant here) employed him to load all logs to be shipped to it and another concern at Diboll where its sawmill is located. The case has been to this court once before on a plea of privilege and it was reversed and remanded for a retrial of that issue. See Southern Pine Lumber Company v. King, 130 S.W.2d 942. The contract sued on was as follows:

"August 15, 1937.
"Shepherd, Texas

"Mr. D. C. King
"Shepherd, Texas

"In consideration of you purchasing and maintaining enough loaders and loader equipment in and near Shepherd to load all the logs, hardwood, pine and box factory pine, to be shipped to Southern Pine Lumber Company and Temple Manufacturing Company at Diboll, Texas, we will give you the loading of all of the logs to be shipped from the above place and will pay you $1.50 per thousand feet Doyle Scale for all the logs properly loaded on cars.

"You are to load as many cars as said Southern Pine Lumber Company and Temple Manufacturing Company would want and will be responsible for any demurrage accruing on cars and will furnish all necessary equipment and material necessary to load the cars also pay for all labor and be responsible for any damages done while loading, and in the event they discontinue shipping you will leave your address with Southern Pine Lumber Company or notify some of their representatives your future address where you can be notified when they would want to begin loading.

"Yours very truly
"Southern Pine Lumber Company
"By: E. H. Kirkland
"Accepted:
"D. C. King"

Pursuant to the above contract the plaintiff in partnership with one George Hood purchased loading equipment consisting of two rigs, one powered by a tractor and the other by a Ford V–8 truck. Both were rigged up with winches so as to make two log loading outfits. The total cost was $800, $400 being paid by each. After about fifteen days plaintiff purchased Hood's interest and from that time on ran the log

J. O. Minton and R. E. Minton, both of Lufkin, for appellant.

Manry & Cochran and V. A. Collins, all of Livingston, for appellee.

562

loading job alone. He loaded logs for the defendant from along in August, 1937, to May 1938, when there was a temporary cessation of loading. About a month thereafter, the defendant without notice to plaintiff and without his consent employed another to continue loading logs at Shepherd. The plaintiff seeks to recover in this suit damages represented by the loss of profits which he would have made had he been permitted to complete the contract. It was stipulated that after plaintiff ceased loading logs a total of 4,333,958 board feet of logs were loaded out from Shepherd for the defendant. The plaintiff alleged that he would have made a profit of $1 per thousand feet on the loading of said logs. He also alleged that because of the wrongful breach of the contract the value of his loading equipment greatly depreciated so that he was forced to sell it for $275 in an effort to minimize his loss, and he sought a further damage of $525 because of the depreciation of his loading equipment. The defendant's theory was that its agent, E. H. Kirkland, who purported to execute said written contract on its behalf had no authority, express or implied, to make the contract; that no responsible officer of the company ever saw the alleged contract or knew of its existence until long after plaintiff King ceased to load logs for it. It filed a plea of non est factum against the contract. It was contended that at the time the contract was made, there was not more than 40,000 feet of logs cut for shipment from Shepherd; that plaintiff loaded all of said logs for it and so exhausted the subject matter of the contract; the contract by its terms not covering logs not actually cut at the time it was made. The case was tried to a jury and in response to special issues the jury found that E. H. Kirkland was the agent of the defendant at the time the contract was executed; that he acted within the scope of his authority; that plaintiff would have made a net profit of $1 per thousand feet had he been permitted to fulfill his contract; that the difference in market value of the loading equipment as the result of the termination of the contract was $525. They also answered certain other issues which have no bearing on the matters presented by this appeal. The trial court entered judgment for the plaintiff for $4,-333.98 loss of profits, and $525 depreciation in value of the loading equipment, making the total judgment $4,878.98.

Opinion.

In the outset we are confronted with a motion of the appellee to dismiss the appeal because the appellant filed no motion for a new trial in the trial court. The record shows that the jury returned its verdict and judgment was entered for the plaintiff on the last day of the term of court, and that court was adjourned on that day. Full five days' time not being given from the rendition of the judgment to the adjournment of the term no motion for new trial was required. Rule 71a for District and County Courts. Stillman v. Hirsch, 128 Tex. 359, 99 S.W.2d 270, 275. The motion to dismiss is overruled.

By its first proposition the appellant contends there was no proof that the purported agent Kirkland "was fully authorized and empowered to make such contract * * * and was acting within the scope of his authority in binding defendant by the terms of said contract" as alleged by the plaintiff. Briefly stated, the facts show that Kirkland was a woods foreman for the appellant, his job being to locate and negotiate purchase of timber and supervise the cutting, hauling, loading and shipment of the logs to the mill under the direction of his superior, D. C. Kenley. His job was to keep logs moving to the mill to keep it running. He appears to have had direct charge of the loading of logs at Shepherd for shipment by rail to appellant's mill. He had been employed by the appellant for eleven or twelve years. He frequently concluded agreements with log haulers and log loaders. However, Kirkland worked directly under Mr. D. C. Kenley, an official of the appellant company who was head of the department in which Kirkland worked. Mr. Kenley testified that Kirkland had no authority to conclude contracts for the purchase of timber or loading or hauling of logs without first referring the matter to him, Kenley, and getting his authority to conclude the contract; that it was not the practice of the company to make loading contracts in writing as was done in this case; that the company had prepared a set form of written agreement to be signed by all independent contractors for its benefit in connection with Social Security requirements, etc.; that Kirkland said nothing to him about this contract; that he had no knowledge of the existence of such contract until long after the appellee had ceased loading logs for the company.

■ We think appellant's contention is without merit. The testimony of appellant's own witness, Kenley, summarized briefly above, was that Kirkland had authority to conclude contracts for the loading operations, and that he did conclude such contracts. It should be noted that making contracts with log loaders, and others engaged in logging operations for the defendant, was part of the business entrusted to Kirkland as woods foreman. Such contractors connected with the operations at Shepherd dealt with Kirkland, and only with Kirkland. The requirement that such contracts be first submitted to Kenley for approval before Kirkland concluded them was a matter between the agent Kirkland and the company. There is nothing to suggest that such contractors knew or had any reason to suspect that he was not fully empowered to contract. He may have breached the duty which he owed his employer in concluding the agreement here involved without referring it to Kenley, but that did not affect the validity of the contract which he made with King, unless King knew of such limitation upon his authority. And as to that matter the burden was on the appellant to show that King did have such knowledge.

■ It is a principle so well settled as hardly to require the citation of authority that where an agent in making a contract acts within the general scope of his authority, restrictions imposed by the principal will not affect the validity of the contract, unless such restrictions are brought to the knowledge of the person with whom he deals. Morgan v. American Cent. Ins. Co., 80 W.Va. 1, 92 S.E. 84, L.R.A.1917D, 1049; Great Northern R. Co. v. O'Connor, 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703. The remedy of the principal in such case is an action against the agent. Bank of British North America v. Cooper, 137 U.S. 473, 11 S.Ct. 160, 34 L.Ed. 759. It is only just that the principal, and not third persons with whom the agent has been sent forth to deal, shall suffer the consequences of the agent's breach of his principal's instructions.

■ Appellant insists that King did have notice of such limitation on Kirkland's authority. King and George Hood were partners in the log loading operation about fifteen days as above mentioned. Hood testified that during that time he asked Kirkland for a written contract and "he said that they did not give written contracts.

He said that they were only oral but as long as we loaded satisfactory we could load all the logs in Shepherd." The written contract as made was with King. But regardless of whether notice of a limitation of the agent's authority given to Hood would have charged King with such notice, it is our view that the statement would not have been notice to King if Kirkland had made the statement to him instead of Hood. The statement amounted to nothing more than a declaration by Kirkland that it was not the policy of the company to give written contracts. It was in no sense a statement that his own authority in making contracts was in anywise limited. The fact that the instant contract was in writing was explained by both King and Kirkland. In order to undertake the loading contract, it was necessary for King to purchase equipment at an expense of $800 and he wanted a contract in writing giving him a right to load all the logs to be loaded at Shepherd before putting his money in the loading equipment.

■ We now come to what we think is the most difficult part of this case, and that is the sufficiency of the evidence to sustain the damage assessed by the jury. The appellee testified that he would have made a profit of $1 per thousand feet on the loading. But when called upon to itemize the expense of loading, his testimony shows that he would not have made that much. The amount of logs loaded on each car was from 9,000 to 11,000 feet, the average being 10,000 feet per car. King paid all his labor by the car except a roustabout whom he paid $1.50 per day. On the average he received a gross amount of $15 per car. He itemized the expense per car as follows: labor, $4.25; gasoline for driving loader, 12¢; oil, 5¢; stakes, 80¢; wire, $1.00; or a total expense of $6.22, leaving a net profit of $8.78 per car or 87.8¢ per thousand feet, and not $1 as found by the jury. The trial court also awarded $525 damages for depreciation in value of the loading equipment by reason of the breach. This was improper. This item falls within the rule of consequential damages and on the facts before us was too remote to be foreseen.

■ It is our conclusion that the judgment in this case is excessive to the extent of 12.2 cents per thousand feet of logs involved and $525 alleged for depreciation of valuation of the equipment, or a total excess of $1,053.82. If the appellee will

within fifteen days file a remittitur of that amount, we will affirm the judgment in his favor for $3,825.16. The appellee of course is not required to file this remittitur, as he may elect to decline the remittitur and accept a remand of the case if he thinks he can establish greater damage on another trial.

Judgment affirmed on condition of remittitur.