# GRANT COUNTY DEPOSIT BANK v. GREENE.

## No. 11501.

United States Court of Appeals,
Sixth Circuit.

Dec. 16, 1952.

John E. Shepard, Covington, Ky. and L. M. Ackman, Williamstown, Ky. (L. M. Ackman, Williamstown, Ky., and John E. Shepard, Covington, Ky.), for appellant.

Weldon Shouse, Lexington, Ky., on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Grant County Deposit Bank, a Kentucky corporation, has appealed from a judgment for $5,020.62 (with interest on separate portions thereof from specified dates) entered by the district court on the verdict of a jury in favor of O. M. Greene, a resident citizen of Georgia. A directed verdict was ordered in the same action against J. W. Eckler of Williamstown, Grant County, Kentucky. Eckler has not appealed.

The cause of action accrues from the manner in which the bank breached its duty to Greene, a live-stock dealer, in the handling of drafts drawn by him on J. W. Eckler, a cattle buyer, to whom Greene had sold and shipped numerous consignments of cattle, the purchase price of which was covered by the several drafts. The cattle sold by Greene to Eckler were shipped in carloads directly to the latter, and a sight draft for each shipment was drawn by Greene upon Eckler and deposited in the Citizens Bank and Trust Company of Bainbridge, Georgia, which attached instructions to each draft and forwarded the same for collection to the appellant bank at Williamstown, Kentucky. The instructions attached and forwarded to appellant with each draft were: "This is a cash item, do not hold. If not paid on presentment, return immediately, wiring nonpayment."

During the period beginning April 1, 1949, and ending June 24 of the same year, fifteen drafts by Greene upon Eckler were deposited in the forwarding bank of Bain-

bridge, Georgia, and were transmitted by that institution to the collecting bank, appellant here. The first twelve drafts were collected after considerable delay in each instance. As to these drafts, the time lapse between the date of deposit in the forwarding bank and the date of collection by the collecting bank ranged from eleven to twenty-five days, with an average of about two weeks.

The thirteenth draft was in the amount of $4,487.45, and was deposited by Greene in the Citizens Bank and Trust Company at Bainbridge, Georgia, on May 25, 1949. This draft was not paid by Eckler, on account of the unsatisfactory condition of the cattle shipped, but was, at his direction, returned by the appellant bank. It was subsequently paid, however, by the Blue Grass Stock Yards at Lexington, Kentucky, which bought the cattle.

The fourteenth and fifteenth drafts in the series are the only two involved in this litigation. Of these, one in the amount of $4,673.55 was deposited by Greene in his forwarding bank on June 15, 1949. Partial settlement was made by Eckler on this unpaid draft by delivery of a carload of pigs of an allowed value of some $3,000, by two cash payments of $500 each, and by a small credit for interest. This settlement left $669.92 unpaid, which amount was included in the judgment awarded against the appellant bank.

No payment was made by Eckler on the fifteenth and final draft of $4,350.70, which was deposited by appellee in his bank at Bainbridge, Georgia. The judgment entered in the district court on the verdict of the jury was for the total of the unpaid balance of the fourteenth draft and the entire amount of the fifteenth draft: namely $5,020.62.

The gist of the charges made by appellee Greene against the appellant bank are that the bank was grossly negligent in handling the drafts forwarded to it for collection. See Exchange National Bank v. Third National Bank, 112 U.S. 276, 5 S.Ct. 141, 28 L.Ed. 722; that the bank had made misrepresentations to appellee as to the solvency and net worth of Eckler; and that the

bank, knowing Eckler was insolvent, had fraudulently for the purpose of deceiving appellee given incorrect information as to the true financial condition of Eckler. See principle stated in Restatement of the Law, Agency, sec. 384(c), p. 857; see, also Bank of British North America v. Cooper, 137 U.S. 473, 11 S.Ct. 160, 34 L.Ed. 759.

The appellant sets forth in its brief that the appellee expressly and by his acts and conduct ratified the transactions between him and his customer, Eckler; that the trial judge, under the pleadings and evidence, should have granted the motion of the appellant bank for a directed verdict at the conclusion of the evidence introduced by appellee and renewed by appellant upon conclusion of the introduction of all the evidence in the case; that the trial judge should have sustained the motion of appellant to alter and amend the judgment by dismissing so much of the complaint as attempted to allege a cause of action against appellant; and that the district court should have sustained appellant's motion for a new trial, which embraced an allegation of newly discovered evidence, "the existence and nature of which was not known and could not have been known by reasonable diligence on the part of this defendant at the time of the trial, or prior thereto."

Vickers, President of the forwarding bank in Georgia, testified as to the interpretation to be given the instructions quoted herein which were sent along with each draft. Asked whether the instructions afforded the collecting bank the right to present the drafts for acceptance or *for payment only*, he replied that the drafts were to be paid, or returned, and that he had no thought that the collecting bank, after acceptance of a draft by the drawee, would continue to hold the draft, with no notice to the forwarding bank. The cashier of appellant bank admitted that he received the collection instructions and placed the same interpretation upon them as had the forwarding bank. He admitted that his bank failed to follow these instructions.

The record discloses that the drafts were not honored by Eckler upon presentation; yet, no notice of that fact was given by appellant to the Georgia bank until the several drafts were returned at delayed intervals, heretofore stated. Before it became an agent for appellee as his collecting bank, appellant was a substantial creditor of Eckler, well aware of his weak financial condition, and had itself denied him further credit. Notwithstanding this, by the manner in which it handled the drafts appellant really extended credit from Greene to Eckler contrary to the instructions received from appellee's Georgia bank.

This court has had recent occasion to affirm a judgment of the same district judge against the appellant here in a case bearing similarity to that at bar. Grant County Deposit Bank v. McCampbell, 6 Cir., 194 F.2d 469. There, where the drawer of a sight draft deposited it with a forwarding bank under instructions to forward the draft to the Grant County Deposit Bank for presentation and collection with instructions accompanying the draft stating that if it were not paid upon presentation the forwarding bank should be notified by telegram, we held that the Grant County Deposit Bank was the agent of the drawer and that its failure to disclose knowledge of the drawee's depressed financial circumstances and to follow instructions concerning notice of dishonor was such breach of duty as rendered the Grant County Deposit Bank liable for the resulting loss to the drawer. In that case, no fact issue was presented. This court affirmed the action of the district court in sustaining a motion for summary judgment in favor of the plaintiffs.

In the instant controversy, issues of fact were presented upon which the court submitted the case to the jury under appropriate instructions, fully protective of appellant's lawful rights. A chief insistence of appellant is that the actions of the appellee Greene, in permitting the delayed collection of the drafts prior to the time when the last two were returned unpaid and in subsequently attempting to collect from Eckler without making any claim against appellant bank, constitute such ratification of the acts of the appellant as to relieve it of liability to appellee.

In response to the first branch of this argument, it would seem that the continued explicit instructions from appellee's for-

warding bank to appellant to handle each draft as a cash item did not constitute a waiver of its liability in failing to follow previous like instructions as to the other drafts. It is well to observe that there was substantial evidence of numerous complaints registered by the Georgia bank, by letter and in telephone conversations, of the delay by appellant in collecting the drafts and transmitting the proceeds.

An answer to the second branch of appellant's argument would seem to be that it had no right to complain of the efforts of appellee on his own to collect from Eckler the delinquent payments. Collection of such would have relieved the bank of liability. The conduct of appellee did not require a change of position by appellant or in any manner serve to prejudice it.

Embry v. Long, 256 Ky. 266, 269, 270, 75 S.W.2d 1036, 1038, best states the principles of Kentucky law relative to questions of ratification and estoppel insofar as applicable to this case. The Court of Appeals of Kentucky declared: "It is a fundamental factor in cases of estoppel that ratification of an unauthorized act of an agent to be made binding on a principal must have been done with a full knowledge of all the material facts, and if they have been suppressed or unknown, the ratification is treated as invalid. * * * The foundation of the doctrine of estoppel by silence is punishment for fraud and that not constructive or legal but actual fraud. * * * Remaining passive does not ordinarily deprive a person of his legal rights unless in addition thereto he does some act to induce or encourage another to alter his condition and thereby it becomes unconscionable to award him those rights. * * * In Shaw v. Farmers' Bank & Trust Co., 235 Ky. 502, 31 S.W.2d 893, 895, it is written: 'Silence, to work an estoppel, must amount to bad faith, and this cannot be inferred from facts of which the person sought to be estopped has no knowledge.' [Citing other Kentucky cases.] * * * Another primary and essential element to the enforcement of the rule of estoppel is that the adverse party must have relied upon the conduct or representation of the other and thereby been prejudiced or induced to change his position for the worse or to suffer some injury of a substantial character by reason of having been thus misled." Cf. Bank of Owensboro v. Western Bank, 76 Ky. 526.

■ The district judge charged the jury fully and fairly as to the only conditions upon which appellant could properly be held liable to the appellee. At this juncture, it would be well to analyze his clearcut, comprehensive and correct instructions to the jury. The charge pointed out that the pertinent Kentucky statute KRS 357.-060, provides that, where an item is received on deposit or by a "subsequent agent bank for collection," payable in another city, it shall be deemed exercise of ordinary care to forward that item by mail not later than the business day next following its receipt either (1) direct to the drawee or payor in the event the drawee or payor is a bank, or (2) to another bank collecting agent, according to the usual banking custom, either located in the city where the item is payable or in another city; and that the designation of such methods shall not exclude any other method of forwarding or presentment which under existing rules of law would constitute ordinary care.

At the outset, the jury was instructed that, notwithstanding this statute, the bank was not to be considered negligent and held accountable to Greene if the jury believed from all the evidence that the bank's method of handling the transactions had been by agreement with Greene, or by a custom prevailing in handling the transactions in controversy, or by his approval of the method which the bank said was adopted by it in taking the drafts and waiting for some time "possibly, until Mr. Eckler could be found or would call at the bank."

This instruction was repeated in substance later in the charge in the following impressive language: "As I say, in the first place, if the bank was led, either by express direction or by custom or by approval of former acts—similar transactions, by Mr. Greene to hold these drafts or to extend further time or if you believe that they, acting, as they believed, expressly by custom or led to believe by the plaintiff, Greene, that they were to hold these drafts until

Mr. Eckler saw the cattle or until such reasonable time as he might see fit to come in and take them up, then you should find for the defendant, the Grant County Deposit Bank."

Again, after instructing the jury as to the duty of the bank to present immediately the draft to Eckler for payment, or if he could not be brought to the bank to make payment or if he said the cattle had not arrived, or "something of that nature," then it was its duty to notify Greene or his Georgia bank immediately of the circumstances and to let Greene decide whether or not he wanted the drafts held by appellant or to give further time for their collection, the Judge charged: "If, over this period of time which started back in April, I believe, this arrangement which he had with Mr. Eckler, if you believe from all the evidence and all reasonable inferences which may be drawn from it that Mr. Greene consented and agreed to being more lenient or giving more time or handling the transactions as the bank says it handled them, then, of course, the bank is not liable."

Instructions were correctly given that the agent bank, Grant County Deposit Bank, was in duty bound at all times to be faithful and loyal to its principal, to advise him of every material fact known by the agent affecting the principal's business, to use ordinary care and diligence at all times in dealing with his business and to follow the instructions as given by him or his forwarding bank, not ever to act adversely to his interest "by having, serving or acquiring any private interest of its own in antagonism or in opposition to the business of the principal," but to act solely for his benefit in all matters concerning the agency.

The jury was told that it was the duty of the bank not to extend credit to the payee of the draft, unless, under custom and usage in handling the transaction, Greene, either by actual consent or by approval of the conduct of the transactions with Eckler, had acquiesced in the bank's method of handling the transactions; and that the bank had no right to extend credit to Eckler by holding the draft or drafts, either after presentment and nonpayment, or by failing to present them, without advising the appellee or the forwarding bank of its actions.

The jury was instructed further that, if it should be found from the evidence that prior to June 15, 1949, the appellant, through its officers or agents, had stated or represented to appellee or his forwarding bank of Bainbridge, Georgia, that Eckler was solvent and of a net worth ranging from $18,000 to $20,000, and that such statement was made wilfully, intentionally and fraudulently and was known to be untrue and made to mislead appellee; and if appellee had relied upon it and was thereby caused with resultant damage to deal with Eckler, then the jury should find for appellee; but, *unless it so believed,* it should find for appellant.

The jury was cautioned that any opinion gratuitously expressed to appellee by appellant bank or its officers as to the solvency of Eckler did not, if given in good faith, render the bank liable to him for the loss of which he complains. The Judge added: "The jury is further instructed that the mere failure of the defendant, The Grant County Deposit Bank, to collect the drafts in question, does not establish the negligence of the defendant or its liability for such failure, and the jury must find from the facts established by all the evidence, including reasonable inferences therefrom, that the negligence of the defendant bank was the proximate cause of the plaintiff's loss, if any."

We think that the foregoing survey of the instructions which were given the jury demonstrates that the district judge was most careful to make clear to the jury the weight of the burden which plaintiff was bound to carry in order to make out his case and that the court omitted no proposition of law upon which appellant could properly base defenses.

It would seem fruitless to review in detail the evidence in the case, but it is apparent that there was substantial evidence to support the charges made by appellee as to the negligence of the bank in handling the drafts, as to its misrepresentations with reference to the solvency of Eckler, and as to the incorrect information given appellee as to his true financial condition. On ap-

peal, we, of course, are not concerned with the preponderance of the evidence.

██ We turn now to the contention of appellant that in the latter part of July, 1949, appellee accepted from Eckler a promissory note in the amount of $5,920.70, covering the unpaid balance at that time of the draft of June 15, 1949, and the face amount of the draft of June 24, 1949, together with interest items. Appellant insists that the acceptance of this note by appellee constituted accord and satisfaction which discharged it from any liability to him. This allegation was based on the sole testimony of Eckler. Greene positively denied that he had received any such note executed by Eckler. The jury, from its verdict, obviously accepted on this sharp issue of fact the testimony of Greene as true and that of Eckler as false; for the district judge had charged the jury: "Now, there was testimony you will recall from the witness, J. W. Eckler, that on or about the 29th day of July, 1949, Mr. Greene met him at the Sparta stockyards or some place in the locality down there and that they had a talk about this matter and figured up the indebtedness and he executed note to Mr. Greene for approximately forty-nine hundred dollars and that he later made a payment of a thousand dollars on that note. If you believe that that did occur—in other words, if you believe that Mr. Eckler executed such a note for this same indebtedness and that note was accepted by Mr. Greene in satisfaction of this debt, then that is an absolute defense. Mr. Greene is bound by his acceptance of a note in place of the indebtedness shown on the face of the drafts and if you believe that that occurred then you should find for the defendant, the Grant County Deposit Bank."

██ Appellant stoutly insists that the district Judge should have granted it a new trial on the ground of newly discovered evidence. R. L. Vincent, an attorney who had represented Eckler in negotiations with Greene, made an affidavit that at the time he testified at the trial in the district court he was shown a purported photostatic copy of a writing, the original of which had been dictated by him and transcribed by his stenographer on February 18, 1950.

Vincent swore that the photostatic copy appeared to be blotted with ink or grease and that his inspection of the copy on the witness stand could not reveal to him the true condition and context of the original writing. He swore further that several days after the trial, at the request of attorneys for the appellant bank, he went to the office of the district court clerk and there, for the first time since he had dictated it on February 18, 1950, saw the original writing, which showed on its face several erasures each of which obliterated the word "note" which, he said, was on the document when executed by Eckler and delivered to appellee. He testified that the original writing read as follows: "This is to advise that I owe O. M. Greene a note in the sum of Five Thousand Thirty Nine Dollars and Two Cents ($5039.02) and I hereby agree to pay One Hundred Dollars ($100.00) per month on said note beginning on March 1, 1950, and continuing until said note and interest are paid in full. Witness my hand this 18th day of February, 1950. J. W. ECKLER."

On the photostatic copy of the foregoing writing, which Vincent said read as above, the word "note" does not appear, nor does it appear on the original writing which was in evidence at the time of the trial. Both the original and the photostatic copy show blurs which appellant insists were the result of erasures. Greene made oath that, when the writing was handed to him at Vincent's office, he considered it of no value and, when getting into his automobile to return home, he had put it in the glove compartment of the car where it remained for more than a year, along with miscellaneous articles such as pliers, oil cans, road maps, and the like. He had completely forgotten about the writing, he stated, until, at the insistence of his attorney, he searched for it diligently and found it in his automobile.

When the writing was found, Greene says he placed it in an envelope in the same condition in which he found it and mailed it to his attorney at Lexington, Kentucky. After that, he did not see it again until it was handed to him by his attorney at Bainbridge, Georgia, on April 2, 1951, when

he was giving his deposition. He then identified the writing and gave it to the court reporter to be filed with his deposition. Greene swore further that "any changes, alterations or obliterations that may now appear in said instrument was a result of its being abandoned in the glove compartment of said automobile and through no studied effort or desire of any person or persons." Affiant Greene stated further that Eckler never gave him a promissory note of any kind or description, and that he had no conversation in the office of Attorney R. L. Vincent about a promissory note.

At the time Vincent testified, the original writing in controversy had already been made a part of the record by the introduction of it in evidence by appellant's attorney when the deposition of the appellee was taken. This original writing, moreover, was shown by the attorney for appellant to the witness Eckler when called to testify on the bank's behalf. Notwithstanding this, the attorney for appellant showed the witness Vincent the photostatic copy rather than the original writing. We think, therefore, that the appellant is not entitled to a new trial upon the ground of newly discovered evidence. Clearly, the evidence could have been ascertained by it by reasonable diligence at the time of, or prior to, the trial.

It is well settled that a new trial will not be granted for newly discovered evidence which, with reasonable diligence, might have been discovered and produced at the trial. See decisions of numerous courts of appeals to this effect collated in Vol. 48, Federal Digest, New Trial, ☞102, including General Motors Co. v. Swan Carburetor Co., 6 Cir., 44 F.2d 24, certiorari denied 282 U.S. 897, 51 S.Ct. 181, 75 L.Ed. 790; Wright v. Southern Express Co., C.C.W.D. Tenn., 80 F. 85.

It should be observed, also, that in Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884, 893, and other cases, we have held that the granting or refusing of a new trial upon the ground of newly discovered evidence of a contradictory and impeaching character rests in the sound discretion of the trial judge, and that such

evidence which tends merely to affect the weight and credibility of the evidence does not constitute a proper basis for a new trial. In that case, we cited earlier decisions of this court. See also Anderson v. Tway, 6 Cir., 143 F.2d 95, 96; Great Atlantic & Pacific Tea Co. v. Chapman, 6 Cir., 72 F.2d 112. See, likewise, Campbell v. American Foreign S.S. Corporation, 2 Cir., 116 F.2d 926; Benge's Administrator v. Marcum, 194 Ky. 121, 238 S.W. 174.

For the foregoing reasons, we find no merit in this appeal; and the judgment of the district court is, therefore, affirmed.